**NATIONAL TREASURY EMPLOYEES UNION, Petitioner,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent.**

No. 82–2094.

United States Court of Appeals, District of Columbia Circuit.

Argued May 26, 1983.

Decided July 12, 1983.

Gregory O'Duden, Washington, D.C., with whom Robert M. Tobias, John F. Bufe, and Lois G. Williams, Washington, D.C., were on brief for petitioner.

Pamela P. Johnson, Attorney, Federal Labor Relations Authority, Washington, D.C., with whom Steven H. Svartz, Acting

Sol. Federal Labor Relations Authority, Washington, D.C., was on brief for respondent.

Before TAMM and GINSBURG, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

■ This case centrally involves the finality requirement for purposes of appellate review. Final action for appellate review purposes does not necessarily coincide with executed or enforced action. Rather, the finality requirement is met when the initial decision-maker's action becomes firm and stable, the definitive "last word" of that arbiter on the matter at hand. A final order, whether administrative or judicial, may be stayed pending appeal. The stay prevents immediate execution of the final order, but it does not affect the order's amenability to immediate appeal.[1] In the matter before us, an order's finality for purposes of appellate review has been confused with the order's amenability to immediate execution or enforcement.

The National Treasury Employees Union (NTEU or Union) seeks our review of a decision of the Federal Labor Relations Authority (FLRA or Authority) declaring nonnegotiable a Union proposal made during NTEU's collective bargaining negotiations with the Department of Treasury, United States Customs Service (Customs or Agency). The Union proposed a clause that would stay execution of adverse personnel actions pending review through either of the two administrative channels to which employees have recourse: appeal through the collective bargaining agreement's grievance and arbitration procedure, or appeal to the Merit Systems Protection Board (MSPB).[2] The FLRA acknowledged that a proposal limited to stays pending appeal through the grievance mechanism would be negotiable. However, the Authority held the entire stay proposal nonnegotiable because it encompassed stays pending appeal to the MSPB.

The Authority distinguished the two appeals channels, grievance and arbitration on the one hand, MSPB review on the other, on this reasoning: a stay would not impede resort to the grievance machinery, but it would block recourse to the MSPB. The MSPB, the Authority reasoned, entertains appeals only from final agency actions; an agency action becomes final, the FLRA read the MSPB's regulations and decisions to say, on its "effective date." An action lacks an effective date, according to the FLRA, when it is stayed. Therefore, the FLRA concluded, stay of an adverse action pending MSPB review would have this anomalous result: instead of merely deferring execution of the adverse action, the stay would strip the MSPB of appellate jurisdiction, and thus permanently bar or forever suspend the adverse action.

■ We conclude that the FLRA, distracted by imprecise language in some MSPB opinions, failed to differentiate between two distinct meanings or uses of the term "final" action or decision. An agency's order becomes "final" or "effective" for

---

1. *See generally* Restatement (Second) of Judgments § 13, comments b, f (1982) (finality is not affected by fact that an appeal operates automatically as a stay of the judgment appealed from, or that appellant obtained a stay pending appeal).

2. In adverse action cases, an aggrieved employee generally has "a choice of procedures; he must initially and irrevocably decide either to pursue his claim through the negotiated grievance mechanism included in the collective bargaining agreement between his union and his employer or to utilize the statutorily established appellate procedures of the MSPB. 5 U.S.C. § 7121(e)(1) (Supp. V 1981)." *Devine v. White,* 697 F.2d 421, 428 (D.C.Cir.1983) (footnote omitted). This forum choice is available to employees who have been discharged for misconduct, suspended for more than 14 days, reduced in grade or pay, furloughed for 30 days or less, or removed or demoted for unacceptable performance. *See Local 2578, Am. Fed'n of Gov't Employees v. General Servs. Admin.,* 711 F.2d 261 at 263–264 & n. 11 (D.C.Cir.1983) (citing 5 U.S.C. §§ 4303, 7512 (Supp. V 1981)).

appellate review purposes when the agency arrives at a terminal, complete resolution of the case before it. An order lacks finality in this sense while it remains tentative, provisional, or contingent, subject to recall, revision, or reconsideration by the issuing agency. The word "final" is sometimes employed, however, to describe a dispositive order that has become "final by appeal or expiration of time for appeal."[3] Stays of enforcement until an order becomes final in this latter sense are commonplace; indeed, in some settings, they are automatic.[4] Such stays, of course, do not impede appeals from the stayed dispositive order; their sole purpose is to preserve the status quo while an appeal is in the offing or in progress.

■ NTEU proposes that Customs bargain over stays of the Agency's final adverse actions pending MSPB review. Such dispositive actions, even if Customs consents to stay their enforcement pending appeal, remain "final" or "effective" in the only sense here relevant—they are firm actions, conclusively taken, subject to recall or revision only if reversed or modified in prescribed review procedures. The FLRA, we note, may not direct Customs to agree to the Union's stay proposal or to make any concession to NTEU's request;[5] but the Authority erred in holding that the proposal was nonnegotiable because it would block MSPB review and therefore result in permanent deferral of the Agency's adverse action. The stays at issue, which Customs remains free to reject so long as it bargains about them in good faith, would not affect the MSPB's appellate jurisdiction; they would simply delay execution of Customs' final, dispositive orders pending the outcome of administrative review.[6]

## I. BACKGROUND

During its nationwide, master collective bargaining agreement negotiations with

---

**3.** *See, e.g.,* 28 U.S.C. § 1963 (federal district court judgment may be registered in other federal districts when it has become "final by appeal or expiration of time for appeal"), discussed in *In re Professional Air Traffic Controllers Org.,* 699 F.2d 539 (D.C.Cir.1983).

**4.** *See, e.g.,* Fed.R.Civ.P. 62(d) (appellant generally may obtain a stay pending appeal by giving a supersedeas bond); Fed.R.Civ.P. 62(e) (United States or federal agency may obtain a stay pending appeal without posting a bond); Fed.R.Civ.P. 62(f) (judgment debtor, if entitled to a stay of execution pending appeal under state law, may also obtain a stay in federal court); Fed.R.Civ.P. 62(g) (power of appellate court to preserve status quo during pendency of appeal is not limited by other provisions in Rule 62); Fed.R.Civ.P. 62(h) (court may stay enforcement of judgment issued under Fed.R.Civ.P. 54(b) pending subsequent judgment as to other claims or other parties).

**5.** The FLRA may order an agency to negotiate in good faith on a proposal, *see* 5 U.S.C. § 7114(a)(4), (b), 5 C.F.R. § 2424.10(b), but it may not "compel either party to agree to a proposal or to make a concession." 5 U.S.C. § 7103(a)(12).

"When authorized negotiations reach an impasse, either party may take the dispute to the Federal Service Impasses Panel, *see* 5 U.S.C. § 7119(b)(1), which is empowered to take any necessary action to resolve it, *id.*

§ 7119(c)(5)(B)(iii), including binding arbitration and imposed settlement." *American Fed'n of Gov't Employees, Local 1968 v. FLRA,* 691 F.2d 565, 569 n. 26 (D.C.Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2085, 77 L.Ed.2d 297 (1983). Refusal to follow the Panel's directive constitutes an unfair labor practice. 5 U.S.C. §§ 7116(a)(6) (agency unfair labor practice) & 7116(b)(6) (union unfair labor practice). The Panel's decision is reviewable, first before the Authority, then in court, in an unfair labor practice proceeding. *See id.* §§ 7105(a)(2)(G) & 7118(a)(6)–(8) (FLRA resolution of unfair labor practice complaints); *id.* § 7123(a) (judicial review of FLRA decisions). *See, e.g.,* National Ass'n of Gov't Employees, Locals R 12–130 & R 12–145, 7 FLRA 245, 252–53 (1981). *See generally Department of Treasury, Internal Revenue Serv. v. FLRA,* 707 F.2d 574 at 576–577 & n. 7 (D.C.Cir.1983).

**6.** We intimate no views on the soundness of the Union's proposal concerning stays of adverse personnel actions pending grievance procedures or appeals to the MSPB. As just indicated, *supra* note 5, Customs is not precluded from bargaining to an impasse on either or both aspects of NTEU's proposal. We note, moreover, that this case concerns only negotiated stays between employers and employees. It does not involve any claim that the MSPB is authorized to impose a stay on a federal employer pending MSPB review of an action adverse to an employee.

Customs, NTEU proposed the following clause: [7]

> The employer shall stay the effect of any decision to take [disciplinary action, adverse action, or action based upon unacceptable performance] against any employee pending the outcome of any administrative appeal through the grievance and arbitration procedure, or any appeal to the MSPB, as appropriate.

Customs ultimately declined to bargain over this stay proposal, whereupon the Union petitioned the FLRA to decide whether the clause was negotiable. J.A. 1–2.[8]

Before the FLRA, Customs argued that the proposal was incompatible with the section of the Federal Service Labor-Management Relations Act[9] that excepts certain "management rights" from an agency's encompassing obligation to bargain. The "management rights" section, 5 U.S.C. § 7106, provides in relevant part:

> (a) Subject to subsection (b) of this section, nothing in this chapter shall affect the authority of any management official of any agency—
>
> . . . .
>
> (2) in accordance with applicable laws—
>
> (A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;
>
> . . . .
>
> (b) Nothing in this section shall preclude any agency and any labor organization from negotiating—
>
> . . . .
>
> (2) procedures which management officials of the agency will observe in

exercising any authority under this section;

. . . .

The FLRA held the clause NTEU proposed non-negotiable on the ground that it would interfere impermissibly with the management rights specified in 5 U.S.C. § 7106(a)(2)(A). J.A. 17–18.

While "management rights" themselves are non-negotiable, bargaining is nonetheless authorized on "procedures which . . . the agency will observe in exercising [its nonnegotiable prerogatives]." 5 U.S.C. § 7106(b)(2). Our review in cases involving the problematic distinction between nonnegotiable management rights under 5 U.S.C. § 7106(a), and negotiable procedures for exercising those management rights under 5 U.S.C. § 7106(b), is guided by this court's pathmarking decision in *Department of Defense v. FLRA,* 659 F.2d 1140 (D.C.Cir. 1981), *cert. denied,* 455 U.S. 945, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982). One portion of the *Department of Defense* opinion (*Dix-McGuire Exchange,* 659 F.2d at 1152–58) involved a union proposal to stay the removal or suspension of an employee pending exhaustion of the grievance procedure included in the collective bargaining contract. The FLRA had held the proposal negotiable, and we affirmed.

The court pointed out in *Dix-McGuire Exchange* that the union's proposal did not address the substantive criteria governing removal or suspension. Instead, it addressed a timing question properly characterized as "procedural": the issue was *when,* not *whether,* the agency could execute its management right to remove or

---

**7.** As submitted to the Authority, the Union's proposal contained a blank space at the place where the bracketed words appear. All parties agree, however, that the bracketed language accurately reflects NTEU's position. Joint Appendix (J.A.) 17 n. 5; Brief for Petitioner at 5 n. 4; Brief for the FLRA at 5 n. 4.

**8.** *See* 5 U.S.C. § 7105(a)(2)(E) (FLRA authority to resolve negotiability disputes). In addition to the stay proposal, NTEU also petitioned the FLRA to review the negotiability of a travel payment proposal covering expenses incurred by employees using official time for matters

involving administration of the collective bargaining agreement. The FLRA held the travel payment proposal negotiable, J.A. 14–16; Customs' appeal from that decision has been stayed for reasons unrelated to the instant appeal. *See United States Customs Serv., Dep't of Treasury v. FLRA,* No. 82–2116 (D.C.Cir. filed Sept. 20, 1982) (motion to stay proceedings granted Feb. 28, 1983).

**9.** Civil Service Reform Act of 1978, Title VII, 5 U.S.C. §§ 7101–7135 (Supp. V 1981).

suspend an employee. The proposal, if adopted, would not "prevent agency management from 'acting at all.'" *Id.* at 1153. A stay pending resort to the grievance procedure might postpone enforcement of a management right, but that delay alone, the court concluded, "would not take a proposal outside the statutory obligation to negotiate." *Id.*[10]

The FLRA correctly acknowledged that the ruling in *Dix-McGuire Exchange* controlled NTEU's proposal for stays pending "the outcome of any administrative appeal through the grievance and arbitration procedure."[11] The clause NTEU sought to place on the bargaining table, to that extent, was negotiable. J.A. 18. Stays pending appeals to the MSPB, however, were an entirely different matter, the FLRA believed. Such stays, the FLRA thought, would mean Customs could not "act at all": "[T]he condition precedent to [a]gency action, the 'outcome' of an appeal to MSPB, never could occur because MSPB would not accept jurisdiction in the absence of final [a]gency action." J.A. 18. Therefore, the FLRA concluded, an agency is not required to bargain over stays when review of its disciplinary decisions occurs before the MSPB.

The MSPB has both original and appellate jurisdiction. 5 U.S.C. § 7701; 5 C.F.R. §§ 1201.1–.3. The appellate jurisdiction, at issue in this case, is broad and includes review of agency actions to remove, suspend, or demote (either by reductions in pay or grade) employees. *See* 5 U.S.C. § 7701; 5 C.F.R. § 1201.3. In determining that the MSPB would lack appellate jurisdiction over a case in which an agency had stayed an adverse personnel action, the FLRA attributed to the MSPB a super-finality rule. The Authority fastened, particularly, on the specification in MSPB's regulations that petitions for appeal are to be filed "after the

effective date of the action being appealed." 5 C.F.R. § 1201.22(b). A stay pending appeal to the MSPB, the FLRA said, would leave "the effective date" of an agency's action in a state of suspension, and without an effective date, the action would not qualify for MSPB review.

The FLRA cited in support of its decision several MSPB rulings. *Korowin v. Department of Justice,* 4 MSPB 140 (1980); *Cardin v. Department of the Navy,* 4 MSPB 97 (1980), *appeal dismissed,* 7 MSPB 231 (1981); *Alford v. Department of Health, Education, and Welfare,* 1 MSPB 305 (1980). Based on the language employed in those rulings, the FLRA believed that the MSPB in fact parted ways from the general rule governing when an action becomes final for purposes of appellate review. For access to the MSPB, according to the FLRA, the challenged agency action must not only be final in the sense that it is firm and complete, it must also be executed.

## II. ANALYSIS

[6] We note first that the FLRA's decision turned on interpretation of MSPB regulations and case law, matters outside the Authority's expertise and not within its enabling statute. Therefore the respect a court ordinarily accords to an agency's decision when the agency construes its own charter is not due here. *See United States Department of Justice, Immigration and Naturalization Service v. FLRA,* 709 F.2d 724, at 729 n. 21 (D.C.Cir.1983); *Library of Congress v. FLRA,* 699 F.2d 1280, 1286 n. 29 (D.C.Cir.1983).

The FLRA correctly observed that NTEU's stay proposal would be a proper subject for collective bargaining if it simply deferred enforcement of a Customs "decision to take disciplinary action, adverse action, or action based upon unacceptable performance," but did not "prevent the agency

---

**10.** The court noted that it did not read the union's proposal to encompass situations in which immediate enforcement might be required "to carry out the agency mission during emergencies," citing 5 U.S.C. § 7106(a)(2)(D), and added that the FLRA could set time limits to insure expeditious processing of reviews

pursued through the grievance and arbitration mechanism. Department of Defense (Dix-McGuire Exchange), *supra,* 659 F.2d at 1158 & n. 97.

**11.** *See supra* text accompanying note 7.

from acting at all." J.A. 18. The Authority erred, however, in concluding that the proposed stay, under MSPB regulations and precedent, would render the Agency's decision nonfinal and thus nonappealable to the MSPB. Sensibly read, MSPB's regulations and precedent do not obliterate the distinction between final and executed agency action.

The reference in the MSPB regulations to "effective date" is most reasonably read to signify the date of the agency's final word on the contested personnel action. MSPB's regulations, as the FLRA noted, J.A. 18, reflect the policy that appellate review should abide final agency action. The finality principle serves to husband a review forum's resources by blocking appellate consideration of rulings that may be altered or "fade into insignificance" by the time the initial decisionmaker disassociates itself from the matter. *See* C. WRIGHT, THE LAW OF FEDERAL COURTS § 101 (4th ed. 1983); *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). MSPB regulations governing the exercise of appellate jurisdiction, interpreted in light of their purpose, are properly construed in line with the final judgment rule applicable in the federal courts, a rule reflecting the same resource-conservation concern. The main rule, as codified, provides for appeals only from final decisions of the district courts, 28 U.S.C. § 1291; *cf. Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (collateral order exception to the final judgment rule). *See also* 28 U.S.C. § 1292 (authorizing appeals from specified categories of interlocutory decisions).

The Supreme Court has defined a final decision as "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). A stay of execution of a district court's final decision, as the *Catlin* definition indicates, does not bear on the appealability of the decision. In fact, Rule 62 of the Federal Rules of Civil Procedure, *see supra* note 4, indicates that in most cases stays of final decisions pending appeal are routinely available.

▮ Similarly, final agency action occurs when the agency has made an unalterable decision and only implementation of that decision remains. *See generally* 5 B. MEZINES, J. STEIN & J. GRUFF, ADMINISTRATIVE LAW § 48.03[1] (1983). As the Supreme Court explained in addressing the considerations determining finality for judicial review of an agency action:

> [T]he relevant considerations in determining finality are whether the process of administrative decision-making has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action.

*Port of Boston Marine Terminal Association v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 209, 27 L.Ed.2d 203 (1970) (citations omitted); *cf. Carter-Mondale Presidential Committee, Inc. v. Federal Election Commission,* 711 F.2d 279 at 283–286 (D.C.Cir.1983). The NTEU stay proposal, if adopted, would not alter the substantive determination made by Customs; it would serve to delay, but not to preclude, implementation of the Agency's decision to take adverse action against an employee. *See Department of Defense v. FLRA (Dix-McGuire Exchange), supra.* MSPB review of a Customs decision that the Agency itself has stayed will not disrupt Customs' decisionmaking process as that process will have already been completed. Further, the Customs decision will have determined the legal rights of the affected employee. No change in the legal consequences ultimately flowing from Customs' decision will occur unless the decision is reversed or modified on appeal.

As to MSPB precedent, the FLRA relied on less than fully-considered language employed in several cases. In *Cardin v. Department of the Navy, supra,* an employee challenged a specific reduction-in-force (RIF) notice before the effective date of the

notice.[12] The agency extended the effective date and eventually cancelled the RIF notice, but Cardin argued that the agency had actually moved him from a permanent position to a temporary one. The MSPB initially declared that the appeal, filed prior to the effective date of the RIF notice, was premature, but remanded the case to the presiding official (hearing officer) for an airing of Cardin's allegation of actual injury. 4 MSPB at 98. On remand, the MSPB's field office found that "the agency had taken no action with respect to the [employee] which was appealable to the [MSPB]." 7 MSPB at 231. The employee again appealed and the MSPB, agreeing with the field office, found "no evidence" that the agency had in fact moved Cardin from a permanent to a temporary position. The RIF notice had been cancelled and the prospect that the agency might commence a new RIF left Cardin "in no worse position than any other employee in an agency which is contemplating a future need to reduce its work force." Id. at 232. In short, on second appeal, the MSPB described Cardin as a case involving no extant agency action, final or otherwise; rather, Cardin's challenge was reduced to a forecast of a new RIF and future action in line with anticipated RIF notices.

In Alford v. Department of Health, Education, and Welfare, supra, a group of employees challenged the agency's performance appraisal system because they had not been asked to participate in developing the system. The petitioners alleged that the system devised by the agency "ordinarily results in removal or reduction in grade." 1 MSPB at 305. The MSPB refused to hear

the appeal because "speculation that removal, reduction in grade, or reduction in force may result is not an appealable event." Id. at 306. Korowin v. Department of Justice, supra, similarly involved an unripe challenge. The petitioner sought review of an alleged denial of a within-grade salary increase, but the MSPB pointed to, and agreed with, the presiding official's decision that definitive agency action had not yet occurred: "[N]o agency 'decision . . . sustaining the negative determination' had been made." 4 MSPB at 141.

After the FLRA decision in this case, the MSPB dismissed as prematurely filed another challenge to a RIF notice. Windom v. Department of the Navy, MSPB No. SF03518010522 (July 13, 1982), reprinted in Brief for the FLRA at F–1—F–4. The employee in Windom filed his appeal over two weeks before the effective date of the notice. Relying on Cardin v. Department of the Navy, the MSPB stated that it "is without authority to adjudicate appeals from actions which have yet to be effected." Id. at F–2. It cited 5 U.S.C. § 1205(g), which instructs that the MSPB "shall not issue advisory opinions." Id.[13]

In the MSPB cases relied upon by the FLRA, the agency decisionmaker had not spoken its definitive "last word." In Alford, there was only "speculation" about future adverse employee action; in Korowin, the agency had yet to issue a negative determination; and in Cardin and Windom, there was nonfinal, interlocutory agency action, because a RIF notice, prior to the specified effective date, can be amended or cancelled.[14] The NTEU proposal at issue

12. Every employee subject to a RIF action is entitled to written notice at least 30 days, but no more than 90 days, before the effective date of the action. 5 C.F.R. § 351.801. A general RIF notice announces the agency's intent to reduce its work force, while a specific RIF notice alerts the individual employees subject to the RIF.

13. The decision in Windom is not easily grasped. The MSPB observed that "[t]he RIF action had been effected by the time the hearing was conducted," and noted that the presiding official might have waived the requirement that the appeal filing await the effective date,

in which event the MSPB's regulations would have allowed the appeal to proceed.

14. See 5 C.F.R. § 351.803 (general RIF notice may be cancelled, renewed, supplemented, or the agency may allow it to expire); id. § 351.-805 (specific RIF notice can be amended, allowed to expire or, before its effective date, the agency may issue a new notice). RIF notices, because they are conditional—they may be withdrawn, altered, or amended—can be compared to class action certifications in civil litigation. See Fed.R.Civ.P. 23(c)(1). Such certifications are interlocutory and may not be ap-

here, by contrast, does relate to final agency action. It would stay execution of that action, but would not convert the agency's "last word" into an action still subject to the agency's recall, revision, or reconsideration. The MSPB cases relied upon by the FLRA are therefore inapposite. None of them concerned the question whether a stay bears on the finality of an agency's decision.

It is not difficult to comprehend, however, why the FLRA ruled as it did. The MSPB used broad language to announce that only "actions which have been effected" are appealable. *E.g., Alford, supra,* 1 MSPB at 306. But the language implying that final action means executed action was unnecessary and, indeed, inappropriate. Absent MSPB decisions speaking to the point with unmistakable clarity, we would hesitate long before concluding that the MSPB is in fact operating on the premise that a stayed decision is an unappealable decision. For, if the FLRA has accurately divined what the MSPB meant, then the MSPB has arrogated to itself authority to preclude federal agencies from voluntarily staying the enforcement of adverse employee actions pending MSPB review. We are unaware of any indication that Congress intended to confer upon the MSPB such authority to tell other agencies when to execute their final actions.[15]

The FLRA view of MSPB law also fails to advert to a factor important in the administration of the Federal Service Labor-Management Relations Act.[16] As this court recently noted:

> To promote consistency and to discourage forum shopping, Congress has provided that an employee's choice of procedural routes cannot affect the applicable standard of review[.] . . . [A]rbitral decisions are subject to judicial review "in the same manner and under the same conditions as if the matter had been decided by the [MSPB]." 5 U.S.C. § 7121(f) (Supp. V 1981).

*Devine v. White, supra* note 2, 697 F.2d at 428–29 (footnotes omitted). "[N]othing in the [Act] requires that arbitration and MSPB actions always adhere to the same standards and procedures," but "Congress intended that there be some symmetry between the arbitration and MSPB processes" and "[e]ven a cursory evaluation of the statute makes it plain that the [Act] sets arbitration on a par with administrative review before the MSPB." *Local 2578, American Federation of Government Employees v. General Services Administration, supra* note 2, at 264, 265.

The FLRA decision reviewed here draws an unwarranted distinction between MSPB appeals and contract grievances; it does not treat arbitrations and MSPB appeals "in the same manner and under the same conditions," nor does it promote consistency or discourage forum shopping between these two appeals channels. This court, affirming the FLRA, has already held negotiable a stay pending exhaustion of a contractual grievance procedure. *Department of Defense v. FLRA (Dix-McGuire Exchange), supra.* Under the FLRA's decision in the case before us, if a stay proposal pending arbitration is adopted in the bargaining process, there would be a powerful incentive for an aggrieved employee to forego MSPB review and instead appeal through

---

pealed as a matter of right. *See Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978); *see generally* Comment, *Rule 41(b) Dismissal as a Route to Appellate Review of an Adverse Class Determination,* 48 U.Chi.L.Rev. 912 (1981). RIF notices, prior to their effective date, also bear comparison to judgments on "one or more but fewer than all [multiple] claims," which are "subject to revision at any time before the entry of judgment adjudicating all the claims." Fed.R.Civ.P. 54(b).

**15.** We reiterate that our decision today says nothing about the authority of MSPB to impose a stay of final action on an unwilling agency pending MSPB review. *See supra* note 6. We address only cases in which a federal agency, in its discretion or in the context of a collective bargaining agreement, undertakes to stay execution of a measure that otherwise qualifies as an appealable, final agency action.

**16.** *See supra* note 9.

the grievance procedure. That procedure, but not an appeal to the MSPB, could hold adverse action in abeyance pending the outcome of administrative review. To eliminate this incentive and promote the uniformity Congress envisioned, a stay negotiable where the aggrieved employee pursues arbitration should be negotiable as well where the employee elects MSPB review.[17]

### CONCLUSION

The NTEU stay proposal should not bear on the finality, for appellate review purposes, of an adverse action by Customs. The MSPB, we are confident, will observe the commonly-accepted meanings of nonfinal (interlocutory) action, final action not yet executed, and final action that has been executed. The stays proposed by NTEU, if adopted, would be lifted on completion of review through arbitration or by the MSPB. Though the execution of adverse action will be delayed if Customs agrees to accept NTEU's proposal, Customs will not be impeded from deciding, unilaterally, whether to take adverse action and will not be prevented from "acting at all" to implement that action. The NTEU proposal therefore entails a negotiable procedure, not a nonnegotiable management right.

For the reasons stated, the petition for review is granted, the decision of the FLRA is reversed, and the matter is remanded to the Authority for the entry of a decision and order consistent with this opinion.