## ALUMINUM COMPANY OF AMERICA, Petitioner,

v.

## UNITED STATES of America and Interstate Commerce Commission, Respondents.

No. 84–1491.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 12, 1985.

Decided May 20, 1986.

---

Dept. of Justice, Robert S. Burk, Acting Gen. Counsel, I.C.C., Lawrence H. Richmond, Deputy Associate Gen. Counsel, I.C.C., and John J. Powers, III, and John P. Fonte, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents.

Robert B. Batchelder, with whom Lawrence E. Wzorek, Omaha, Neb., and John P. Legendre, Dallas, Tex., were on the brief, for intervenor Missouri Pacific R. Co.

Barry J. Brooks, Dallas, Tex., entered an appearance for intervenors Point Comfort & Northern R. Co., et al.

Before BORK and SCALIA, Circuit Judges, and MACKINNON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

Congress, concerned that states had been exercising their traditional authority over intrastate rail commerce in a manner that contributed to the railroad industry's financial difficulties, *see Texas v. United States,* 730 F.2d 339, 346 (5th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 267, 83 L.Ed.2d 203 (1984), adopted in 1980 those provisions of the Staggers Rail Act which permit a state to regulate intrastate rail commerce only if the Interstate Commerce Commission has certified that the relevant state agency follows standards and procedures that accord with those followed by the ICC, and which also give railroads the right to obtain prompt ICC review of decisions of certified state authorities to ensure that proper standards and procedures have been followed. 49 U.S.C. § 11501(b), (c) (1982). This case presents the questions (1) whether a rail shipper has standing to seek judicial review of a determination by the ICC that it lacked jurisdiction to consider a rail carrier's petition for review of a state rail commission decision because the commission's provisional certification had been terminated before the decision was final; and (2) whether the ICC's consequent assertion of original jurisdiction over the rail ship-

Dickson R. Loos, with whom David H. Baker, Washington, D.C., was on the brief, for petitioner.

H. Glenn Scammel, Atty., I.C.C., with whom J. Paul McGrath, Asst. Atty. Gen.,

per's complaint constitutes final agency action appropriate for review.

## I

On March 30, 1981, petitioner, the Aluminum Company of America ("Alcoa"), filed complaints under § 229 of the Staggers Rail Act, Pub.L. No. 96–448, 94 Stat. 1934 (1980), 49 U.S.C. § 10701a note (1982) (savings provision), with both the ICC and the Railroad Commission of Texas ("RCT"), the state agency with responsibility for regulating intrastate rail transportation in Texas. The complaints alleged that the rates charged on certain freight movements inside Texas were unjustly and unreasonably high. Because the RCT had sought ICC certification of its standards and procedures and (along with the corresponding agencies of thirty-nine other states) had been provisionally certified on April 17, 1981, *see State Intrastate Rail Rate Authority—P.L. 96–448*, 364 I.C.C. 881, 885 (1981), *petition for review denied sub nom. Illinois Central Gulf R.R. v. ICC*, 720 F.2d 958 (7th Cir.1983), the ICC declined to entertain the complaints filed before it, on the ground that the RCT had jurisdiction.

The RCT held hearings in October of 1981 and again in July of 1983. During this period the ICC, which had extended the RCT's provisional certification once, *see State Intrastate Rail Rate Authority—P.L. 96–448*, 47 Fed.Reg. 5,786 (1982), was issuing repeated warnings to the RCT that its application for final certification would be denied unless it brought its standards and practices into conformity with those followed by the ICC. *See Railroad Commission v. United States*, 765 F.2d 221, 225 & n. 2 (D.C.Cir.1985). On April 20, 1984, the ICC denied the RCT's request for final certification. It directed the RCT to complete "to the maximum extent feasible all pending matters capable of final resolution" before May 20, and announced that it would, by operation of law, assume original jurisdiction over all intrastate rail rate matters pending before the RCT on that date. *See State Intrastate Rail Rate Authority —Texas*, 1 I.C.C.2d 26, 52 (1984), *petition for review denied sub nom. Railroad Commission v. United States*, 765 F.2d 221 (D.C.Cir.1985).

The ICC's order apparently spurred RCT action on the Alcoa complaints. Less than a week later, on April 26, the RCT hearing examiner issued a proposed decision, finding the challenged rates unjustly and unreasonably high, and setting lower rates. Although the letter transmitting the hearing examiner's opinion noted that under the RCT's rules parties had fifteen days to file exceptions, and ten additional days to file responses to exceptions, it nevertheless provided that the proposed decision would be presented to the RCT for consideration eighteen days later, on May 14, 1984. On May 2, one of the Intervenor rail carriers, Missouri Pacific Railroad Company ("MP"), contended before the RCT that the Staggers Rail Act demanded a twenty-day exception period; MP also asked the RCT for a discretionary extension of the exception period until May 31. On May 14, without formally responding to MP's contention and request, the RCT adopted the hearing examiner's proposed decision and provided that it would take effect on May 19, one day before the deadline established by the ICC. MP filed exceptions to the hearing examiner's proposed opinion on May 16, but then decided instead to seek ICC review of the RCT decision pursuant to § 11501(c), filing a petition for review on June 21. The ICC issued a decision on September 12, 1984, holding that Alcoa's complaints had been "pending" on May 20, within the meaning of its order denying certification, because, under RCT rules, petitions for rehearing of the RCT decision could have been filed until June 8, 1984; and that it therefore lacked jurisdiction to hear MP's § 11501(c) petition, since it had acquired original jurisdiction over Alcoa's complaints. Alcoa (not MP) filed this timely petition for review under 28 U.S.C. §§ 2321(a), 2342(5), 2344 (1982).

## II

◼ Although Alcoa's petition and argument fail to make the distinction, there are

two separate actions of the ICC under challenge here. The first is its failure to act upon the merits of MP's petition, and to do so within thirty days as § 11501(c) of the Act requires. (The petition was filed on June 21 and was not dismissed until September 12.) We think it clear, however, that a rail shipper like Alcoa is not aggrieved by—and thus has no standing to challenge—the Commission's dismissal of, or refusal to entertain, a § 11501(c) petition.* The § 11501(c) mechanism for ICC review of state rail commission decisions is, by its express terms, available only to rail carriers, *see Utah Power & Light Co. v. ICC,* 747 F.2d 721, 745 n. 3 (D.C.Cir.1984) (concurring statement of Ginsburg & Wilkey, JJ.). Shippers dissatisfied with state rail commission decisions must seek relief in state courts. *See id.* Since shippers are not within the zone of interests that § 11501(c) is designed to benefit, they have no standing to complain of the withholding of the benefit. *Cf., e.g., Glass Packaging Institute v. Regan,* 737 F.2d 1083, 1087–90 (D.C.Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 509, 83 L.Ed.2d 400 (1984). To be sure, the allegedly violative refusal to entertain the petition was predicated on a legal theory (*viz.,* that the RCT had not finally decided Alcoa's complaints) which, if applied in other contexts, will do Alcoa harm. But it is agency action, rather than the legal theory underlying agency action, which establishes the injury-in-fact necessary for standing; and the injury-in-fact in the present case, deprivation of ICC review of the RCT determination, is not one of which Alcoa (as opposed to MP) can complain.

■ The related but separate agency action under challenge is the ICC's assertion of original jurisdiction over Alcoa's complaints. Alcoa claims that this deprives it of the benefit of the RCT decision setting lower rates, and forces it to participate in costly and time-consuming proceedings. The ICC argues in response that its decision to assert original jurisdiction does not constitute "final agency action" and thus is not appealable under 28 U.S.C. §§ 2321(a), 2342(5) and 2344. Alcoa replies that the ICC's decision must be final, because it meets the test of " 'impos[ing] an obligation, deny[ing] a right or fix[ing] some legal relationship.' " *Trans-Pacific Freight Conference of Japan v. Federal Maritime Board,* 302 F.2d 875, 877 (D.C. Cir.1962) (quoting earlier cases). In one sense, of course, it does so—since Alcoa is denied the right to seek immediate enforcement of the RCT order, and burdened with the obligation of retrying its claims before the ICC if it wishes to obtain lower rates. But these are not the sorts of rights and obligations to which the quoted test refers. It is firmly established that agency action is not final merely because it has the effect of requiring a party to participate in an agency proceeding. *See, e.g., FTC v. Standard Oil Co.,* 449 U.S. 232, 241–43, 101 S.Ct. 488, 493–95, 66 L.Ed.2d 416 (1980); *Peter Kiewit Sons' Co. v. United States Army Corps of Engineers,* 714 F.2d 163, 168 (D.C.Cir.1983). Nor is it final merely because it eliminates the right to enforce a prior decision. That may be so where the agency action and the prior decision are not interconnected elements of the same statutory scheme. But where, as here, the agency is asserting an arguably valid power to redetermine a matter adjudicated initially by a body subordinated to the agency in the statutory scheme, the mere commencement of the redetermination, with the accompanying invalidation of the earlier ruling, is not final action.

■ In short, the Commission's assertion of original jurisdiction is no more the sort of "deprivation of a right" or "imposition

---

* Subsection 11501(c) provides, in relevant part, that

> [a]ny rail carrier providing rail transportation subject to the jurisdiction of the Commission ... may petition the Commission to review the decision of any State authority, in any administrative proceeding in which the lawfulness of an intrastate rate, classification, rule, or practice is determined, on the grounds that the standards and procedures applied by the State were not in accordance with the provisions of this subtitle.

49 U.S.C. § 11501(c) (1982).

of an obligation" that constitutes final action than is a colorably justified agency decision to undertake reconsideration of a final judgment of one of its administrative law judges. In fact, there is even *less* finality in the present case, since on Alcoa's theory the action of the RCT was not a final judgment, but was subject to a pending appeal under § 11501(c)—so that the Commission's action did not deprive Alcoa of a substantive right that had purportedly been conclusively adjudicated, but only prolonged the pending proceeding in one fashion rather than another. At most it denied Alcoa the procedural advantages attendant to the less-than-*de-novo* review under § 11501(c); but if the denial of a procedural right constitutes final agency action, then the doctrine of finality is indeed an empty box.

■ Nor does the claim that assumption of original jurisdiction is beyond the ICC's statutory authority make any difference. The requirement of finality is predicated upon the perception that litigants as a group are best served by a system which prohibits piecemeal appellate consideration of rulings that may " 'fade into insignificance' by the time the initial decisionmaker disassociates itself from the matter." *National Treasury Employees Union v. FLRA,* 712 F.2d 669, 674 (D.C.Cir.1983) (citations omitted). That policy is no less applicable to piecemeal appeals on issues of statutory authority than to piecemeal appeals on other points. In the present case, for example, if the ICC were to resolve Alcoa's initial rate complaint by setting rates equal to or lower than those set by the RCT, Alcoa would have no reason to seek review.

■ Nonfinal agency actions are interlocutorily reviewable in extraordinary circumstances—where, for example, they are in clear violation of law, *see, e.g., Gulf Oil Corp. v. United States Department of Energy,* 663 F.2d 296, 312–13 (D.C.Cir.1981). Alcoa has not even referred to such an exception, much less contended that the facts of this case fall within it. We think it apparent that neither the ICC's interpretation of the term "pending" as used in its order denying certification, nor its conclusion that the decision of the RCT was so "pending," could possibly be thought to be clearly beyond the ICC's statutory authority.

The petition for review is

*Dismissed.*