**AMERICAN TRAIN DISPATCHERS ASSOCIATION, Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

**CSX Transportation, Inc., Intervenor.**

**No. 91–1032.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 28, 1991.

Decided Nov. 22, 1991.

Gordon P. MacDougall, Washington, D.C., for petitioner.

Virginia Strasser, Atty., ICC, with whom James F. Rill, Asst. Atty. Gen., John J. Powers, III, and Robert J. Wiggers, Attys., Dept. of Justice, and Robert S. Burk, Gen. Counsel, and Henri F. Rush, Deputy Gen. Counsel, ICC, Washington, D.C., were on the brief, for respondents. Dennis J. Starks, Atty., ICC, Washington, D.C., also entered an appearance, for respondent.

James D. Tomola, Jacksonville, Fla., and James S. Whitehead, Chicago, Ill., were on the brief, for intervenor.

Before SILBERMAN, D.H. GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

A union, the American Train Dispatchers Association, petitions for review of an Interstate Commerce Commission order dis-

missing its complaint against a carrier, CSX Transportation, Inc., and in effect remitting it to arbitration of its dispute. Because the order of the ICC is not a final order, we lack jurisdiction to review it at this time.

## I. BACKGROUND

In 1987 CSX announced plans to consolidate its train dispatching operations into a single location. Pursuant to standards established by both the Congress, *see* 49 U.S.C. § 11347, and the ICC, *see New York Dock Ry.—Control—Brooklyn Eastern Dist.*, 360 I.C.C. 60 (1979), the carrier was required to determine the average monthly compensation level for its dispatchers. The average compensation level would then be used to calculate a displacement allowance for any CSX dispatcher who was adversely affected by the consolidation.

After CSX determined the average compensation level, the Union informed CSX that the carrier had improperly omitted from its calculation certain overtime earnings of the dispatchers. CSX refused to include the overtime, arguing that under *New York Dock* it was not required to include in the average compensation calculation "extraordinary" overtime earnings, *i.e.*, overtime earnings attributable to the consolidation itself.

The Union filed a complaint with the ICC, seeking an order compelling the carrier to include the disputed overtime earnings in the average compensation figure. The ICC dismissed the complaint, noting that article I, § 11 of *New York Dock* provides for arbitration of such disputes. The Union has petitioned for review of the ICC's order.

## II. ANALYSIS

At the threshold, the ICC argues that the Union's petition is barred for want of finality, ripeness, and exhaustion of administrative remedies. Of these three requirements for review, only finality is jurisdictional, and so we are bound to consider it first. *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 746 (D.C.Cir.1987) (separate opinion of Williams, J.); *see also Tuck v. Pan American Health Org.*, 668 F.2d 547, 549 (D.C.Cir.1981) ("Jurisdiction is, of necessity, the first issue for an Article III court.").

Ordinarily, we have jurisdiction to review only a "final order" of the ICC. 28 U.S.C. § 2344. An agency order is final when it "impose[s] an obligation, den[ies] a right or fix[es] some legal relationship as a consummation of the administrative process." *Chicago & Southern Air Lines v. Waterman Steamship Corp.*, 333 U.S. 103, 113, 68 S.Ct. 431, 437, 92 L.Ed. 568 (1948). In this case, however, the Union's challenge is purely procedural: it claims a right to be heard before the ICC in the first instance and objects to being shunted off to arbitration, subject to only limited ICC review of the arbitrator's decision. Wherever the outer boundary of the finality doctrine may lie, it is clear that a procedural ruling—an agency order that a party proceed "in one fashion rather than another"—is not a final order. *Aluminum Co. of America v. United States*, 790 F.2d 938, 942 (D.C.Cir. 1986) (*Alcoa*). ("[I]f the denial of a procedural right constitutes final agency action, then the doctrine of finality is indeed an empty box.").

A court can review a nonfinal agency order only in "extraordinary circumstances," *see id.*, such as when it causes a party severe and irreparable harm, *see FTC v. Standard Oil Co. of California*, 449 U.S. 232, 244, 101 S.Ct. 488, 495, 66 L.Ed.2d 416 (1980) (*Socal*); *Gulf Oil Corp. v. United States Dep't of Energy*, 663 F.2d 296, 311–12 (D.C.Cir. 1981), or is "in clear violation of the law," *Alcoa*, 790 F.2d at 942. No exception to the final order requirement applies here. That a party must endure the burden and expense of a certain procedure is not, without more, a sufficiently severe and irreparable harm to justify departure from the final order requirement. *See Socal*, 449 U.S. at 244, 101 S.Ct. at 495. Nor has the Union shown that the ICC's decision to defer consideration of its claim until after arbitration is a "clear violation of the law."

## III. CONCLUSION

We conclude that the Union seeks judicial review of a nonfinal order of the ICC,

which we have no jurisdiction to grant. After an arbitrator decides this dispute in the first instance, the Union may seek ICC review of the arbitrator's decision. *See IBEW v. ICC*, 862 F.2d 330 (D.C.Cir.1988). If the Union petitions for judicial review of any final order that the agency may then issue, it may be heard at that time on the merits of its claim that the ICC improperly remitted it to arbitration. *See Socal*, 449 U.S. at 245, 101 S.Ct. at 496.

For the foregoing reason, the petition for review is

*Dismissed.*