161 F.3d 797
 29 Envtl. L. Rep. 20,421
 WEST VIRGINIA HIGHLANDS CONSERVANCY, INCORPORATED, a
corporation, Plaintiff-Appellant,
v.
Bruce BABBITT, Secretary of the Interior; LaRosa Fuel
Company, Incorporated, Defendants-Appellees.
WEST VIRGINIA HIGHLANDS CONSERVANCY, INCORPORATED, a
corporation, Plaintiff-Appellee,
v.
LAROSA FUEL COMPANY, INCORPORATED, Defendant-Appellant,
and
Bruce Babbitt, Secretary of the Interior, Defendant.
 Nos. 97-2559, 97-2603.
 United States Court of Appeals,
Fourth Circuit.
 Argued Sept. 22, 1998.
Decided Dec. 7, 1998.
 
 ARGUED: Walton Davis Morris, Jr., Charlottesville, Virginia, for Appellant. Lisa Elizabeth Jones, United States Department of Justice, Washington, D.C., for Appellee Babbitt; Dean K. Hunt, Buchanan Ingersoll Professional Corporation, Lexington, Kentucky, for Appellee Larosa Fuel. ON BRIEF: Robert F. Cohen, Jr., Cohen, Abate & Cohen, Fairmont, West Virginia, for Appellant. Lois J. Schiffer, Assistant Attorney General, Robert L. Klarquist, United States Department of Justice, Washington, D.C.; William D. Wilmoth, United States Attorney, Patrick M. Flatley, Assistant United States Attorney, Wheeling, West Virginia; Wayne A. Babcock, Special Assistant United States Attorney, Pittsburgh, Pennsylvania; Glenda Owens, Thomas A. Bovard, Office of the Solicitor, United States Department of the Interior, Washington, D.C., for Appellee Babbitt.
 Before WILKINSON, Chief Judge, WIDENER, Circuit Judge, and MAGILL, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.
 Vacated and remanded for dismissal by published opinion. Senior Judge MAGILL wrote the opinion, in which Chief Judge WILKINSON and Judge WIDENER concurred.
 OPINION
 MAGILL, Senior Circuit Judge:
 
 
 1
 Eight years after ceasing mining operations at Kittle Flats and receiving a final bond release from the State of West Virginia, LaRosa Fuel Company (LaRosa) received a Cessation Order from the Office of Surface Mining Reclamation and Enforcement (OSM), requiring it to reduce acid mine drainage from Kittle Flats. The Interior Board of Land Appeals (IBLA) vacated the order, ruling that OSM lacked jurisdiction to enter the order because of the final bond release. The district court agreed. The West Virginia Highlands Conservancy (Conservancy), an intervenor in the IBLA proceedings, appeals. We vacate the judgment of the district court and remand the case with instructions to dismiss it because it is not ripe for review.
 
 I.
 
 2
 Beginning in 1973, the State of West Virginia issued four permits to LaRosa to mine at Kittle Flats, and required LaRosa to post bonds for the reclamation of Kittle Flats after the cessation of LaRosa's mining operations. In July 1981 LaRosa requested the State to grant it a final bond release for each of its permits. After two years of negotiations, the State agreed that LaRosa should have no further liability or responsibility for Kittle Flats and granted a final bond release. The final bond release specifically provides that LaRosa "has fully complied with the provisions of the Code of West Virginia ... and the rules and regulations promulgated and adopted pursuant" thereto. J.A. at 382.
 
 
 3
 Before the final bond release, Congress enacted the Surface Mining Control and Reclamation Act of 1977 (SMCRA), 30 U.S.C. §§ 1201-1328, to "establish a nationwide program to protect society and the environment from the adverse effects of surface coal mining operations...." 30 U.S.C. § 1202(a). SMCRA created OSM within the Department of Interior for the purpose of administration and enforcement. See 30 U.S.C. § 1211(c). Pursuant to SMCRA, the Secretary of Interior, through OSM, devised and implemented an interim regulatory program, or initial program, for regulating surface coal mining and reclamation operations. See 30 U.S.C. § 1251; 30 C.F.R. Parts710-725. The parties do not dispute that Kittle Flats is an interim program site.
 
 
 4
 In 1988, the Secretary of Interior, through OSM, promulgated a termination of jurisdiction rule, 30 C.F.R. § 700.11(d), for the purpose of defining the moment in time at which OSM and state agencies lose jurisdiction over surface mining and reclamation operations. Pursuant to § 700.11(d)(1), OSM's jurisdiction over a reclaimed surface coal mining site terminates when a "regulatory authority determines in writing that under the initial program, all requirements imposed under subchapter B of this chapter [ (30 C.F.R. Parts 710-725) ] have been successfully completed...." 30 C.F.R. § 700.11(d)(1)(i). When OSM's jurisdiction over a site is terminated under § 700.11(d)(1), OSM may not reassert jurisdiction over that site unless the above-described written determination "was based upon fraud, collusion, or misrepresentation of a material fact." 30 C.F.R. § 700.11(d)(2).
 
 
 5
 On several occasions between 1984 and 1991, OSM investigated and identified acid mine drainage seeping from Kittle Flats. On each occasion, OSM refused to take any enforcement action against LaRosa because of its conviction that the State of West Virginia had exclusive jurisdiction over Kittle Flats.
 
 
 6
 In 1991, the Conservancy filed a citizen complaint with OSM, alleging that acid mine drainage from Kittle Flats was contaminating and endangering the environment. After investigation, OSM agreed and, reversing its prior position, entered a Cessation Order against LaRosa, requiring LaRosa to reduce the drainage. On appeal, the IBLA vacated the Cessation Order, ruling that LaRosa's final bond release constituted a sufficient "written determination" under § 700.11(d)(1)(i) to terminate OSM's jurisdiction over Kittle Flats. The IBLA then remanded the case to OSM for the purpose of reasserting jurisdiction under § 700.11(d)(2).
 
 
 7
 OSM has not challenged the IBLA's ruling, and is currently attempting to reassert jurisdiction. The Conservancy, in contrast, appealed the ruling to the district court. After the district court affirmed the ruling, the Conservancy filed the present appeal.
 
 II.
 
 8
 We do not address the merits of this appeal because we find that it is not ripe for review. When making a ripeness determination, we analyze both of the following questions: "(1)[is] the issue[ ] fit for judicial review and (2) will hardship fall to the parties upon withholding court consideration?" Arch Mineral Corp. v. Babbitt, 104 F.3d 660, 665 (4th Cir.1997) (quotations omitted). Here, the answer to both of these questions is no.
 
 
 9
 Typically, a "case is fit for judicial decision where the issues to be considered are purely legal ones and where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." Id. (quotations omitted). Such is the case here. The sole issue on appeal is whether the final bond release constitutes a sufficient writing to terminate OSM's jurisdiction over Kittle Flats pursuant to § 700.11(d)(1). The critical facts relevant to this determination are undisputed, see id. (issue legal where "critical facts are not disputed"), and the IBLA "took final action when it issued an order setting forth its interpretation of [§ 700.11(d)(1) ] as applied to the specific facts alleged." Id. at 668 (quotations omitted).
 
 
 10
 "But even when agency action is final and the issues presented are purely legal, a court may nonetheless properly deem a matter unfit for resolution if ... [t]he court ... determine[s] ... that resolution of the dispute is likely to prove unnecessary." State Farm Mut. Auto. Ins. Co. v. Dole, 802 F.2d 474, 479 (D.C.Cir.1986). This is because "[t]he requirement of finality is predicated upon the perception that litigants as a group are best served by a system which prohibits piecemeal appellate consideration of rulings that may fade into insignificance by the time the initial decisionmaker disassociates itself from the matter." Aluminum Co. of Am. v. United States, 790 F.2d 938, 942 (D.C.Cir.1986) (Scalia, J.).
 
 
 11
 We believe that "resolution of th[is] dispute is likely to prove unnecessary." Dole, 802 F.2d at 479. OSM is currently attempting to reassert its jurisdiction over Kittle Flats.* At oral argument, counsel informed us that OSM is nearing this goal. In the likely event of OSM's reassertion of jurisdiction, OSM will probably reinstate its Cessation Order and the parties will again appeal the merits of such order to the IBLA. If either party is then dissatisfied with the IBLA's ruling on the merits, it can seek federal judicial review. As counsel for the Conservancy conceded during oral argument, OSM's current reassertion efforts will likely bring the parties to the same point as they are now, regardless of this court's decision on appeal. In that scenario, the Conservancy "would have no reason to seek review" of the IBLA's present ruling. Aluminum Co. of Am., 790 F.2d at 942. Indeed, the IBLA's current jurisdictional ruling will have "fade[d] into insignificance." Id.
 
 
 12
 Perhaps more important, it seems clear that the Conservancy will not suffer hardship if this court denies review. "[T]he purpose of the 'hardship to the parties' analysis is to ascertain if the harm that deferring review will cause the petitioner[ ] outweighs the benefits it will bring the agency and the court." Eagle-Picher Indus., Inc. v. EPA, 759 F.2d 905, 918 (D.C.Cir.1985). For "deferral to be outweighed, postponing review must impose a hardship on the [Conservancy] that is immediate, direct, and significant." Dole, 802 F.2d at 480. "Whether [the Conservancy's] charges are sufficiently serious under the 'hardship to the parties' criterion to warrant immediate review depends upon [the] totality of the circumstances." Atlantic Richfield Co. v. DOE, 769 F.2d 771, 783 (D.C.Cir.1984) (quotations omitted; second alteration in original).
 
 
 13
 The Conservancy has not identified any specific hardship that it will suffer if we refuse to consider this appeal. The Conservancy certainly has not shown that "irremediable adverse consequences may flow from a determination that this case is not currently ripe for review," or that "no review will ever be possible" if this appeal is dismissed. International Union, UAW v. Brock, 783 F.2d 237, 250 (D.C.Cir.1986) (quotations omitted). The parties agree that we do not have jurisdiction to consider the merits or validity of the Cessation Order, and that we cannot reinstate or enforce the Cessation Order. If we were to reverse the IBLA's jurisdictional ruling, we could only remand to the IBLA for consideration of the merits of the Cessation Order. According to the parties, the Cessation Order was not automatically enforceable prior to this appeal, will not be automatically enforceable after this appeal, and is only enforceable in the Secretary of Interior's sole discretion. See 30 U.S.C. § 1275 (explaining that review and enforcement of Cessation Orders lies with Secretary of Interior). Accordingly, the parties will suffer no hardship if we do not consider this appeal.
 
 
 14
 Finally, the Conservancy's rights under SMCRA have been fully preserved despite the IBLA's ruling and will not be affected by this Court's refusal to consider this appeal. As explained above, if OSM successfully reasserts jurisdiction then the IBLA's ruling in the present case "fade[s] into insignificance," Aluminum Co. of Am., 790 F.2d at 942, thus rendering "the resolution of th[is] dispute ... unnecessary." Dole, 802 F.2d at 479. Even assuming that OSM fails or otherwise refuses to reassert jurisdiction over Kittle Flats, the Conservancy may file a citizen suit concerning the IBLA's interpretation of § 700.11(d)(1), and allege that OSM and the Secretary of Interior are violating SMCRA by refusing to issue a Cessation Order. See 30 U.S.C. § 1270(a) (permitting citizen suit against United States or Secretary of Interior to compel compliance with SMCRA). Prior to a decision by OSM that it cannot or will not reassert jurisdiction, the IBLA's decision has not deprived the Conservancy of any rights under SMCRA. At most, the Conservancy is now required to engage with OSM in proceedings to reassert jurisdiction under 30 C.F.R.s 700.11(d)(2). This is not enough to establish hardship. See American Train Dispatchers Ass'n v. ICC, 949 F.2d 413, 414(D.C.Cir.1991) ("[t]hat a party must endure the burden and expense of a certain procedure is not, without more, a sufficiently severe and irreparable harm").
 
 
 15
 For the foregoing reasons, we conclude that the IBLA's ruling is not ripe for review, and we vacate the district court's grant of summary judgment and remand with instructions to dismiss.
 
 
 16
 VACATED AND REMANDED FOR DISMISSAL.
 
 
 
 *
 If the Conservancy believes that OSM is dragging its feet, it always has the option of filing a citizen suit against OSM for failing to compel LaRosa to comply with SMCRA. See 30 U.S.C. § 1270(a) (permitting citizen to file suit against United States or Secretary of Interior to compel compliance with SMCRA). Notably, the Conservancy has never availed itself of SMCRA's citizen suit provision and is proceeding in this case solely as an intervenor in intra-Department of Interior proceedings