**DORE & ASSOCIATES CONTRACTING, INC.,**
**Appellant,**

v.

**MISSOURI DEPARTMENT OF LABOR & INDUSTRIAL RELATIONS COMMISSION, James R. Moody, Commissioner, and Ronald Norris, Director, Division of Design and Construction, Respondent.**

**No. WD 43369.**

Missouri Court of Appeals,
Western District.

Dec. 11, 1990.

Mark W. Comley, Jefferson City, for appellant.

William L. Webster, Atty. Gen., Mary Joe Smith, Asst. Atty. Gen., Jefferson City, for respondent.

Before GAITAN, P.J., and TURNAGE and KENNEDY, JJ.

GAITAN, Judge.

This appeal consolidates two actions initiated by the plaintiff/appellant, Dore & Associates Contracting Inc. (hereafter Dore) in the Circuit Court of Cole County. The Missouri Department of Labor and Industrial Relations (hereafter Department) was common to both actions as a defendant and is the respondent of consequence in this appeal. Dore appeals the decision of the circuit court that dismissal of both actions was proper because Dore "failed to exhaust its administrative remedies" in contesting enforcement of a wage determination promulgated by the Department under the "Prevailing Wages on Public Works" Act, Mo.Rev.Stat. §§ 290.210.340 (1986). The judgment of the trial court is reversed and both actions remanded.

On November 17, 1988, the Department issued a wage determination for the Fulton State Hospital Asbestos Abatement Project pursuant to Mo.Rev.Stat. § 290.250 (1986). Section 290.250 requires that:

> Every public body authorized to contract for or construct public works, before advertising for bids or undertaking such construction shall request the department to determine the prevailing rates of

wages for workmen for the class or type of work called for by the public works in the locality where the work is to be performed. The department shall determine the prevailing hourly rate of wages in the locality in which the work is to be performed for each type of workman required to execute the contemplated contract and such determination or schedule of the prevailing hourly rate of wages shall be attached to and made a part of the specifications for the work.

Mo.Rev.Stat. § 290.250 (1986). Section 290.250 goes on to require that wage determinations be made material components of the contract between the contractor and the public body. *Id.* Further, the statute provides monetary penalties for contractors that pay employees less than the prevailing wage stated in the determination and contract. *Id.* Dore did not initiate this wage determination and the record is silent as to whether Dore received notice, either actual or constructive, that the determination had been made or filed.

The wage determination of November 17, 1988, for the Fulton State Hospital Asbestos Abatement Project listed a number of classifications of workers needed to complete the project. These classifications were specifically delineated into various sub-types, each sub-type being assigned individual basic hourly wages, overtime wages, and fringe benefits. The wage determination did not, however, differentiate between different sub-types of workers needed to remove and handle materials containing asbestos. Instead, the wage determination provided only the general classification of "Asbestos Worker" which was assigned a single basic hourly wage, overtime wage, and set of fringe benefits. "Asbestos Worker" is a term of art within the asbestos removal industry denoting a skilled journeyman responsible for reinsulation of areas in which asbestos has been removed. In executing his or her responsibility, an "Asbestos Worker" is charged with supervising "Hazardous Waste Removers" or "Hazardous Waste Helpers," unskilled laborers who remove and dispose of asbestos containing insulation at the direction of an "Asbestos Worker." As with "Asbestos Worker," the designations of "Hazardous Waste Remover" and "Hazardous Waste Helper" are industry terms of art.

On June 2, 1989, nearly seven months after the original wage determination had been filed, Dore entered into a contract with the Missouri Department of Mental Health and the State of Missouri in which Dore agreed to remove or abate asbestos-containing materials at the Fulton State Hospital. As required by § 290.250, this contract obligated Dore to pay "Asbestos Workers" the prevailing wages and benefits as determined by the Department in its wage determination of November 17, 1988.

For the Fulton project, Dore subcontracted the re-insulation work to another contractor who hired at least two or three persons who qualified as "Asbestos Workers." As required by the statute and the contract, these employees were paid the prevailing wage and benefits. Dore, however, also hired ten or eleven "Hazardous Waste Removers" or "Hazardous Waste Helpers" to assist the "Asbestos Workers." These helpers/removers, although paid a wage commensurate to other helpers/removers in the industry, were paid less than the prevailing wage required for "Asbestos Workers" by the November 17, 1988, wage determination.

During Dore's performance of the contract, the Department audited the payroll of Dore and discovered that helpers/removers were being paid less than "Asbestos Workers." On November 21, 1989, the Department advised Dore by letter that the wages paid helpers/removers were inadequate under the wage determination of November 17, 1988 and therefore penalties were being assessed to Dore for purported violations of Mo.Rev.Stat. § 290.250 (1986). These penalties, ordered by the Department to be withheld from the payments due Dore under the Fulton project contract, eventually totalled in excess of $54,000.

On December 21, 1989, Dore filed an "Objection to Wage Determination" with the Labor and Industrial Relations Commission. This objection stated that the let-

ter of November 21, 1989, constituted a wage determination for helpers/removers thus triggering the procedures stated in Mo.Rev.Stat. § 290.260, specifically a hearing, after objection, to the "wage determination" stated in the letter. The Commission refused to hear the objection, stating that Dore was barred from objecting in that, as a "person ... affected" by the original wage determination, § 290.260.3 required Dore to object within thirty days after the determination was filed with the Secretary of State. In a letter dated January 5, 1990, the Department justified its refusal to hear Dore's objection by stating that the "purported objection to Wage Determination No. 89–014–0009 (the original wage determination of November 17, 1988) was not filed within the statutory time period set forth in Section 290.260(3) and therefore cannot be accepted" (parenthetical added).

On February 2, 1990, Dore petitioned the Circuit Court of Cole County seeking review of the Department's refusal to hear the objection and also a declaratory judgment vindicating Dore. Both actions were dismissed by the trial court for the stated reason that Dore had failed to exhaust its administrative remedies.

■ The Missouri Constitution creates a right to judicial review of final administrative decisions in both "contested cases," cases required by statute to be decided after hearing, and decisions made without a hearing.[1] *See Magdala Found. v. Labor & Industrial Relations Comm'n*, 693 S.W.2d 193, 195 (Mo.App.1985). This constitutionally mandated judicial review of administrative decisions not required to be made after a hearing (non-contested cases) has been supplemented and expanded by statute, specifically Mo.Rev.Stat. § 536.150 (1986).[2] *Leggett v. Jensen*, 318 S.W.2d 353, 358 (Mo. banc 1958) (interpreting § 536.105, the precursor of the current statute, § 536.150). If the Department's refusal to hear Dore's objection is a final administrative decision, both the Missouri constitution and § 536.150 provide for judicial review.

■ Chapter 536, "Administrative Procedure and Review," states that " 'decision' includes decisions and orders whether negative or affirmative in form." Mo.Rev. Stat. § 536.010(3) (1986). Certainly the Department's refusal to hear Dore's objection falls within this definition of decision. *See generally State v. Garner*, 459 S.W.2d 40, 44 (Mo.App.1970) (holding that a reviewable decision exists where an administrative body erroneously refused to exercise the power and authority imposed on it by law). Both the Missouri constitution and Mo.Rev. Stat. § 536.150 (1986), impose the additional requirement that the decision be final before it is deemed reviewable. "Finality" is found when "the agency arrives at a terminal, complete resolution of the case

1. Mo.Const. art. 5, § 18, states in relevant part:
   All final decisions, findings, rules and orders on any administrative officer or body existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights, shall be subject to direct review by the courts as provided by law; and such review shall include the determination whether the same are authorized by law.... Unless otherwise provided by law, administrative decisions, findings, rules and orders subject to review under this section or which are otherwise subject to direct judicial review, shall be reviewed in such manner and by such court as the supreme court by rule shall direct and the court so designated shall, in addition to its other jurisdiction, have jurisdiction to hear and determine any such review proceeding.

2. Section 536.150 (1986) states in relevant part:
   When any administrative officer or body existing under the constitution or by statute ... shall

have rendered a decision which is not subject to administrative review, determining the legal rights, duties or privileges of any person ... and there is no other provision for judicial inquiry into or review of such decision, such decision may be reviewed by suit for injunction, certiorari, mandamus, prohibition or other appropriate action, and in any such review proceedings the court may determine the facts relevant to the question whether such person at the time of such decision was subject to such legal duty, or had such right, or was entitled to such privilege, and may hear such evidence on such question as may be properly adduced, and the court may determine whether such decision, in view of the facts as they appear to the court, is unconstitutional, unlawful, unreasonable, arbitrary, or capricious or involves an abuse of discretion; and the court may render judgment accordingly, and may order the administrative officer or body to take further action as it may be proper to require....

before it. An order lacks finality in this sense while it remains tentative, provisional, or contingent, subject to recall, revision or reconsideration by the issuing agency." *National Treasury Employees Union v. Federal Labor Relations Auth.*, 712 F.2d 669, 671 (D.C.Cir.1983). The Department's refusal to entertain Dore's request for a remedy is terminal in nature and is not qualified or provisional. The decision forecloses any and all administrative remedies and offers no possibility that Dore would ever be entitled to a hearing. Further, in determining "finality," the court in *National Treasury* admonished the reviewing court to consider whether administrative decision-making would be disrupted by judicial review and whether "rights or obligations have been determined ... from the agency action." *Id.* at 674. Both these considerations lead to the conclusion that the Department's decision was final. By refusing to hear Dore's claim, Dore has had its right to full payment under the Fulton project contract adversely determined by default. In addition, since the Department has refused to hear Dore's claim there is nothing for judicial review to disrupt. Therefore, the Department's decision to refuse Dore's request for a remedy was a final decision and reviewable by the circuit court.

■ That the Department's refusal to hear Dore's complaint is a reviewable decision is not affected by the fact that Dore did not file an objection within the thirty-day period specified in Mo.Rev.Stat. § 536.150 (1986). To hold otherwise would be patently unfair to Dore who would be trapped in a hopeless "Catch–22" situation: Dore, after being deprived of property through agency action, was at once precluded by the Department from exhausting any and all administrative remedies and at the same time denied judicial review because it had not exhausted its administrative remedies. This situation is quite similar to that in *Northern Colorado Water Conservancy Dist. v. Federal Energy Regulatory Comm'n*, 730 F.2d 1509 (D.C.Cir. 1984). In *Northern Colorado*, the Federal Energy Regulatory Commission rejected the plaintiff's petition to reopen preliminary hydroelectric permit proceedings. This rejection, issued without hearing, was made on the basis that the petition was untimely. *Id.* at 1511. The plaintiff in *Northern Colorado* did not object to the planned hydroelectric project until after the statutory time limitation of thirty days had expired. This untimeliness resulted from the plaintiffs not receiving adequate notice of the location of the proposed project until after the objection period had expired. Thus, much like Dore, the plaintiff in *Northern Colorado* argued that they had no notice of the agency proceedings until after the statutory time limitation for objections had expired. *Id.* at 1514. The opinion authored by Judge J. Skelly Wright states:

> [I]t would be unfair to declare the denial of an untimely effort to reopen a proceeding to be unreviewable, when the basis of the effort is the contention that, because a required notice was not given, a timely objection was infeasible. As Judge Wilkey wrote for this court in *City of Rochester v. Bond*, 603 F.2d 927, 928 (D.C.Cir.1979), where "a complainant was not a party to the agency proceeding, and * * * [where] a complainant objects to the agency's failure to give notice[,] * * * the proper course is to seek reconsideration by the agency. If the matter is reopened, any ensuing final order then may be reviewed in accordance with the review statute. If[,] on the other hand, the agency for any reason declines to reopen the matter, that decision itself would be a statutorily reviewable order."

*Id.* at 1515. In the present action, Dore did not initiate, or participate in, the agency proceedings that generated the initial wage determination of November 17, 1988. Indeed, because the contract between Dore and the State did not exist until seven months after the issuance of the original wage determination, it is arguable that Dore was not a person "affected" by the wage determination within the meaning of Mo.Rev.Stat. § 290.260.3 (1986), and thus could not have objected within the prescribed objection period. Further, Dore

stated repeatedly in its letter of objection to the Department and its petition to the circuit court that it received inadequate notice from the Department that unless all workers dealing with materials containing asbestos were paid on par with "asbestos workers" the penalties under Mo.Rev.Stat. § 290.250 (1986) would be triggered. Dismissal of an action is an extreme remedy and in reviewing such an action by the trial court the reviewing court should accept all statements in the plaintiff's petition as true so as to support the existence of a cause of action. *Bailey v. Richardson*, 667 S.W.2d 720, 722 (Mo.App.1984). In light of this standard, Dore was entitled to review of the Department's decision not to hear its claim.

Dore put a reviewable claim before a court with constitutional and statutory jurisdiction and therefore the circuit court erred in dismissing appellant's causes of action. Accordingly the action is remanded to the trial court for a hearing on Dore's request for review of the Department's actions and for a declaratory judgment.

All concur.