**REES OIL CO. & REES PETRO-LEUM PRODUCTS, INC. Appellants—Respondents,**

**v.**

**DIRECTOR OF REVENUE, Appellant,**

**Department of Natural Resources, Defendant,**

**and**

**The Board of Trustees of the Petroleum Storage Tank Insurance Fund, et al., RespondentsAppellants.**

**Nos. WD 55942 to WD 55944.**

Missouri Court of Appeals, Western District.

Submitted Jan. 6, 1999.

Decided May 25, 1999.

William H. Thomas, Jr., Rolla, for appellant-respondent Rees Oil Co.

Craig F. Martin, Asst. Atty. Gen., for respondent-appellant Director of Revenue.

Jennifer S. Graham, Asst. Atty. Gen., James B. Deutsch, Jefferson City, for defendant Dept. of Natural Resources and respondent-appellant Board of Trustees.

Before SMART, P.J.; HANNA and LAURA DENVIR STITH, JJ.

PER CURIAM.

Rees Oil Company and Rees Petroleum Products, Inc. (collectively "Rees") sought a refund of petroleum transport fees paid into the Underground Storage Tank Insurance Fund ("USTIF") from the Director of Revenue ("DOR") under § 319.100 et seq., RSMo 1994.[1] The DOR failed to take action on the claim for a refund. Rees filed a complaint with the Administrative Hearing Commission ("AHC") seeking review of the DOR's failure to grant or deny the refund claim. The AHC granted Rees'

claim for a refund, but found no authority for awarding interest on that refund. Rees appeals the denial of interest. The DOR also appeals, claiming that the AHC had no jurisdiction to grant a refund to Rees because the DOR had no jurisdiction to grant such a refund. The Board of Trustees of the Petroleum Storage Tank Insurance Fund ("Trustees") also appeals the AHC's decision, contending that the AHC erred (1) in finding that it had jurisdiction over Rees' claim; and (2) in granting the refund. We affirm the AHC's decision.

## Factual Background

In an effort to limit environmental and public health hazards from leaking underground storage tanks containing regulated substances, the Environmental Protection Agency and the State of Missouri established rules and regulations holding owners and operators of such tanks financially responsible for leaks. *See* Joseph B. Pereles, *Underground Storage Tank Rules and Regulations,* 45 J. Mo. B. 485 (1989). In 1989, USTIF was established by § 319.129 to provide funds to assist with cleanup of contamination caused by leaking tanks. *Id.* at 491. Originally, any owner or operator of an underground storage tank was eligible to participate in the fund in order to meet, at least partially, financial responsibility requirements. § 319.131, RSMo 1994.[2] Later changes in the statute made owners and operators of any petroleum storage tank eligible for participation in the fund. § 319.131.1, RSMo Supp.1997. In addition, the name of the special trust fund was changed to the Petroleum Storage Tank Insurance Fund ("PSTIF"). § 319.129.1, RSMo Supp. 1997. The insurance and remedial provisions of the PSTIF were made both prospectively and retroactively available to above-ground storage tank owners.

---

1. All statutory references are the Revised Statutes of Missouri, 1994, unless otherwise indicated.

2. Section 319.131.5, RSMo 1994, stated that the purpose of the USTIF was "provid[ing] moneys for cleanup of contamination caused by releases from underground storage tanks whose owner or operator is participating in the underground storage tank insurance fund [and] ... provid[ing] coverage for third-party

claims involving property damage or bodily injury caused by leaking underground storage tanks whose owner or operator is participating in the fund." After the amendments to the statute, its purpose is now stated to be "provid[ing] coverage for third-party claims involving property damage or bodily injury caused by leaking petroleum storage tanks whose owner or operator is participating in the fund." § 319.131.5, RSMo. Supp.1997.

§ 319.131.8 to .10, RSMo Supp.1997. Responsibility for the Fund was transferred from the Missouri Department of Natural Resources ("MDNR") to the Trustees. § 319.129.4, RSMo Supp.1997.

The PSTIF is funded by the receipt of three fees: (1) an initial operating fee (§ 319.129.2, RSMo Supp.1997); (2) an annual participation fee (§ 319.133, RSMo Supp.1997); and (3) a transport load fee – a surcharge on each load of petroleum paid on delivery by the first person receiving the load in Missouri (§ 319.132, RSMo Supp.1997). Section 319.132 provides that the load fee is administered under §§ 414.102 and 414.152.

Before Chapter 319 was amended as stated above, the Missouri Supreme Court found the load fee unconstitutional as applied to one company, Reidy Terminal, Inc., in *Reidy Terminal, Inc. v. Director of Revenue,* 898 S.W.2d 540 (Mo. banc 1995). Reidy was a tugboat refueling facility which did not operate underground storage tanks. Because it had no underground tanks, Reidy could not participate in the insurance program or environmental clean-up aspects of the USTIF and was ineligible to receive any benefit from the fund. *Id.* at 541. Reidy sought a refund from the DOR, which denied it had authority to make refunds. *Id.* Reidy filed a complaint with the AHC, which ruled that the DOR had authority to make refunds, and determined the surcharge was applicable to Reidy. *Id.* On appeal, based upon Reidy's ineligibility, the court held that imposition of the fee was unconstitutional, because it violated the Commerce Clause of the United States Constitution, Article I, § 8, under the test established in *Evansville–Vanderburgh Airport Auth. Dist. v. Delta Airlines, Inc.,* 405 U.S. 707, 92 S.Ct.

1349, 31 L.Ed.2d 620 (1972). *Reidy,* 898 S.W.2d at 542.[3]

*Reidy* was decided May 30, 1995. On August 1, 1995, Rees sent a request to the DOR for a refund of transport load fees, totaling $42,644.89, paid between October 1991 and September 1993. Rees claimed that it had not owned any underground storage tanks since before 1989. The DOR sent Rees' request to the MDNR, and a notice to Rees that its request for a refund had been forwarded to the MDNR for action. The MDNR sent Rees' counsel a request for additional information, which counsel provided. Rees filed an additional request with the MDNR for a refund of fees paid between April 1, 1996 and August 31, 1996, totaling $8,101.75. During this time, the amendments to the statutes changed the name of the fund from the USTIF to the PSTIF and transferred authority over the PSTIF from the MDNR to the Trustees. The MDNR referred Rees' refund requests to the Trustees. On June 19, 1997, the Trustees voted unanimously to deny Rees' refund requests. Nothing in the record indicates the basis of the decision of the Trustees.

On July 8, 1997, Rees filed a complaint with the AHC against the DOR and the MDNR, seeking a refund of the fees. The MDNR[4], the DOR and the Trustees were joined as parties. The AHC found that the DOR, "by failing to act on [Rees'] refund claim, has effectively refused to consider and has denied the claim." All parties filed motions for summary judgment. After a hearing on the motions, the AHC granted Rees' motion for summary judgment and ordered that the fees be refunded. The AHC declined, however, to order interest on the refund.

**3.** The *Reidy* court outlined the test:
*Evansville–Vanderburgh* provides that such a fee will "pass constitutional muster" if: (1) the fee does not discriminate against interstate commerce; (2) the fee reflects "a fair, if imperfect, approximation" of the value of the benefit conferred; and (3) the fee

is not excessive in relation to the costs incurred by the taxing authority.
*Reidy,* 898 S.W.2d at 542 (internal citations omitted).

**4.** The MDNR filed a motion to dismiss that was eventually sustained by the AHC.

**358**

Rees, the DOR and the Trustees all appeal the AHC's decision.

### Jurisdiction of the Administrative Hearing Commission

Both the Trustees and the DOR contend that the AHC lacked jurisdiction to grant a refund to Rees because there is no statutory authority for the DOR to grant a refund of transport load fees and consequently, there is no authority for the AHC to do so. Furthermore, they claim that: (1) the DOR never issued a written decision as is required for review under § 621.050; and (2) sovereign immunity barred Rees' claim.

■ Before we turn then to the other issues, we consider the contention of DOR and the Trustees that Rees' suit is barred by sovereign immunity. They argue that because Rees' claim for a refund is a suit against the state, the state must consent to the suit. *Kleban v. Morris,* 363 Mo. 7, 247 S.W.2d 832, 836 (1952). We disagree. Rees' claim cannot be considered a claim against the state because the PSTIF is not a state fund. Section 319.129.1 states that "[m]oneys in such special trust fund shall not be deemed to be state funds [and][n]othwithstanding the provisions of section 33.080, RSMo, to the contrary, moneys in the fund shall not be transferred to general revenue at the end of each biennium." The Missouri Constitution recognizes two categories of funds: "state" funds and "nonstate" funds. *See* Mo. Const. Art. IV, § 15 (Nonstate funds include "all taxes and fees imposed by political subdivisions and collected by the department of revenue"). Because the money in the PSTIF is not a state fund, we conclude that sovereign immunity does not apply. *See River Fleets, Inc. v. Carter,* 990 S.W.2d 75, 77 (Mo.App. W.D.1999).

We begin our analysis of the jurisdictional issue by examining whether there

was a decision by the DOR for the AHC to review. The DOR claims that the AHC did not have jurisdiction to review the DOR's failure to act on Rees' refund claim because § 621.050.1 authorizes review only over findings, orders, decisions and assessments by the DOR over matters within DOR's authority.[5] The DOR claims that even if the DOR did have authority to issue the requested refund, review is not proper because the DOR made no specific written decision. Rees, on the other hand, contends that inaction of the DOR is a decision because the DOR referred the refund request to the MDNR which in turn referred the matter to the Trustees. The Trustees denied the request and delivered its decision to the DOR, which in turn delivered the decision to Rees. The AHC held that it did have jurisdiction, stating:

> An administrative agency's failure to act may constitute a decision denying a claim. *Dore & Assoc. Contracting, Inc. v. Missouri Dep't of Labor & Indus. Relations,* 810 S.W.2d 72, 75–76 (Mo. App. W.D.1990). Petitioners argue that they filed a refund claim in August 1995, but that the Director has failed to act on it. The Director, by failing to act on Petitioner's refund claim, has effectively refused to consider and has denied the claim.

In *Dore,* the DOR's refusal to hear an objection to a wage determination was held to fall within the definition of a decision. *Dore,* 810 S.W.2d at 75. The Trustees attempt to distinguish *Dore* on the ground that in *Dore,* the DOR refused to make a decision it had the jurisdiction to make. They claim that the DOR's failure to make a decision in the present case is different because the DOR lacked the jurisdictional authority to make a decision at all.

■ The AHC based its decision on §§ 319.132.1 and 414.102.4, concluding that

---

**5.** Section 621.050 provides the procedure for appealing to the AHC from the DOR. It provides: "Except as otherwise provided by law, any person or entity shall have the right to appeal to the administrative hearing commis- sion from any finding, order, decision, assessment or additional assessment made by the director of revenue." § 621.050.1, RSMo 1994.

the DOR had the power to refund any overpaid surcharge. The DOR argues that there is no statutory authority for the AHC to review decisions of the MDNR and no statutory authority for the DOR to make refunds other than refunds for surcharges paid on products later shipped out of state. The only mention of a refund is in § 414.102.4, RSMo 1994, which states that "[w]hen the inspection fee has been paid on any product regulated by this chapter which is then shipped outside of this state for use, sale or distribution, credit or refund shall be allowed for the amount so paid." There is no authority for refunds on surcharges paid on products not later shipped out of Missouri.

Section 319.129.4, RSMo Supp.1997, provides that "[t]he general administration of the fund and the responsibility for the proper operation of the fund, including all decisions relating to payments from the fund, are hereby vested in a board of trustees." Under the DOR's and the Trustees' theories, the Trustees alone are responsible for all decisions relating to "payments" from the PSTIF, which they argue includes Rees' application for a refund. We disagree.

■■■ When making a determination about the meaning of a statute, we start with the plain language of the statute itself. *International Bus. Machs. Corp. v. Director of Revenue*, 958 S.W.2d 554, 557 (Mo. banc 1997). It is our duty to ascertain the legislative intent from the language used and to give effect to that intent, if possible, considering the words used in light of their plain and ordinary meaning. *State ex rel. Baumruk v. Belt*, 964 S.W.2d 443, 446 (Mo. banc 1998). We resort to rules of construction only where the statutory language is ambiguous. *Id.* When construing a statute, we may take

into consideration other statutes containing similar or related subject matter in the hope that these statutes will shed light upon the meaning of the statute being construed. *State ex rel. Rothermich v. Gallagher*, 816 S.W.2d 194, 200 (Mo. banc 1991). Statutes relating to the same subject are in *pari materia* as though construing one act, whether adopted together or on separate dates. *Id.*

The version of § 319.132.1 in effect at the time Rees paid the fees at issue provides:

> The director of the department of natural resources shall assess a surcharge on persons first receiving all petroleum products within this state which are enumerated by section 414.032, RSMo. Except as specified by this section, such surcharge shall be administered pursuant to the provisions of sections 414.102 and 414.152, RSMo. Such surcharge shall be imposed upon persons first receiving such petroleum products within this state and shall be assessed on each transport load, or the equivalent of an average transport load if moved by other means. All revenue generated by the assessment of such surcharges shall be deposited to the credit of the special trust fund known as the underground storage tank insurance fund.

§ 319.132.1, RSMo 1994.

■■■ The later amendment to § 319.132.1 changed the identity of the entity responsible for the assessment of the surcharge from the MDNR to the Board of Trustees of the PSTIF. § 319.132.1, RSMo Supp.1997. However, the statute still provides that "such surcharge shall be administered pursuant to the provisions of sections 414.102 and 414.152, RSMo[,]" which deal with the collection and refund of fees.[6] *Id.*

---

**6.** "Incorporation by reference is an appropriate legislative procedure." *Professional Houndsmen of Missouri, Inc. v. County of Boone*, 836 S.W.2d 17, 20 (Mo.App.1992) (citing *General Installation Co. v. University City*, 379 S.W.2d 601, 604–05 (Mo. banc 1964)).

"[W]hen a statute ... adopts part or all of another statute by a specific and descriptive reference thereto 'the effect is the same as if the statute or part thereof adopted had been written into the adopting statute.'" *General Installation Co.*, 379 S.W.2d at 604 (quoting

*Reidy* did not expressly decide the issue of the DOR's authority to issue a refund. Instead, because the DOR's authority was not challenged on appeal, the court assumed the DOR had such authority.

Neither the DOR nor the DNR cross-appealed the AHC'S determination that the DOR had authority to refund to Reidy the payments it had made into the underground storage tank insurance fund.... Accordingly, ... we affirm the decision of the AHC that the DOR has authority to refund monies improperly paid into the underground storage tank insurance fund.

*Reidy,* 898 S.W.2d at 543.

If it had been plain to the Supreme Court that the DOR had no authority to issue a refund to Reidy, the court could have ruled in Reidy's favor on that basis and thus have avoided the constitutional issue. Because the court chose not to do so, it is likely that the court did not consider it manifest that the statutes in question exclude the DOR from involvement in refunds.

Chapter 414 provides a regulatory program financed by fees administered by the Department of Agriculture and the Director of the MDNR. In Chapter 414, the General Assembly expressly gives the DOR authority to collect the fees, and to make refunds with regard to oil shipped out of Missouri:

1. Every person first receiving within this state, within the meaning of the word "received", as defined in section 142.010, RSMo, any of the petroleum products regulated by this chapter shall file with the director of revenue on forms prescribed by the director of revenue, on or before the last day of each month, a report listing thereon the amount of such products received by said person during the preceding calendar month, and attach thereto remittance in payment of inspection fees due.

2. Fees on all regulated products shall be paid on gallons received, less any exports out of state and any sales to other motor fuel distributors licensed under section 142.070, RSMo.

3. Payment of fees and the report required by this section shall be paid and filed annually if the total fees paid during the previous year amounted to less than twenty-five dollars. The annual report and payment of fees allowed by this subsection shall be due during the month of January. If a business filing annual reports is discontinued at any time, the report and payment of fees shall be due at the time of discontinuance of business.

4. When the inspection fee has been paid on any product regulated by this chapter which is then shipped outside of this state for use, sale or distribution, credit or refund shall be allowed for the amount so paid.

§ 414.102, RSMo 1994.

■ Section 414.102.4 expressly directs the DOR to refund fees paid on petroleum products shipped outside the state. We are not persuaded that the General Assembly drafted this subsection for the purpose of excluding the possibility of any refunds other than refunds for fees paid on products shipped outside the state. Rather, we interpret it as having a purpose of making clear that products being shipped out of state should not be required to participate in the payment of the fee, and to direct the DOR to make a refund in such an instance. It is not unreasonable to conclude that the drafters of Chapters 319 and 414 intended that the DOR have authority to refund fees paid into the PSTIF. Nothing in § 414.102 prohibits refunds in cases where the refund is due for any reason other than because the product is shipped out of Missouri. Also, it makes sense that if the DOR is the refunding entity for the enumerated purpose, then the DOR is the refunding entity for other purposes as well.

*State v. Lloyd,* 320 Mo. 236, 7 S.W.2d 344, 346 (1928)).

■ We recognize that the Trustees are granted authority to generally administer the fund and to make decisions concerning "payments." We believe that the reference to "payment" is related to the insurance function of the PSTIF, which is a large part of the "general administration of the fund." A "refund" is distinguished from the "administration of the fund" by the legislature. Collection of fees and the issuance of refunds are not included within the Trustees' authority. Therefore, if a refund is due Rees, the DOR is sufficiently involved with the issuance of the refund to give rise to Rees' right to seek review from the AHC.

We hold, therefore, that the adverse "decision" made by the DOR provided a ground for Rees to bring its petition before the AHC. The AHC had jurisdiction to hear the case because the DOR had authority, under Missouri law, to refund the monies Rees improperly paid into the USTIF.

### Constitutionality of the Fee

■ The Trustees also claim that the AHC erred by finding that the transport load fee violated the Commerce Clause of the United States Constitution because the fee is only unconstitutional under *Reidy* when applied to a payor "absolutely ineligible to receive any benefit" from the PSTIF. The Trustees reason that Rees has been eligible to receive benefits since August 28, 1996, when Chapter 319 was amended to provide that above-ground storage tank owners such as Rees could retroactively receive a full range of benefits from the PSTIF. The Trustees argue that the amendment confers a retroactive benefit upon Rees because Rees is now eligible to receive reimbursement for clean-up costs associated with leaks of petroleum from active, above-ground storage tanks. Rees is eligible for reimbursement even if the leaks occurred before August 1996, as long as Rees applied for insurance coverage before December 31, 1997. Rees may also benefit under § 319.131.10 by

receiving reimbursement for expenses incurred in cleaning up leaks from inactive, above-ground storage tanks. Finally, the Trustees point out that since August 1996, Rees has been eligible for insurance coverage under the PSTIF for its above-ground storage tanks. The Trustees conclude that Rees is in a different position from Reidy because Rees has all the benefits of the fund that were denied to Reidy.

Rees disputes the Trustee's argument, contending that it was absolutely ineligible to receive any benefit from the underground storage tank insurance fund at the time the fees were paid. Had the decision of the AHC been rendered before August 28, 1996, there is no question that Rees would have been entitled to a refund.

Both Rees and the AHC cite *J.C. Nichols Co. v. Director of Revenue*, 796 S.W.2d 16, 19 (Mo. banc 1990), and analogize Rees' situation to cases involving the application of tax statutes in effect during the tax period in question. Although a transport load fee is a fee and not technically a tax, we find the analogy persuasive. At the time that Rees paid the fees, it had no underground storage tanks and was absolutely ineligible to participate in the fund.

■ Rees reminds us that Article I, § 13 of the Missouri Constitution provides "[T]hat no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges or immunities, can be enacted." A law is considered to be retrospective where: (1) it imposes a new obligation, duty or disability relating to a past transaction; or (2) it removes or impairs a vested or substantial right. *Corvera Abatement Techs., Inc. v. Air Conservation Comm'n*, 973 S.W.2d 851, 856 (Mo. banc 1998). Article I, § 13 of the Missouri Constitution prohibits "any law that attaches new disabilities to past transactions or impairs the vested rights of a party." *American Family Mut. Ins. Co. v. Fehling*, 970 S.W.2d 844, 848 (Mo.App. 1998). Rees claims that it had a vested right to a refund before the 1996 amend-

ment, and the new statute can be applied only prospectively. In *Fisher v. Reorganized Sch. Dist.*, 567 S.W.2d 647, 649 (Mo. banc 1978) the court explained:

> [A] vested right "... must be something more than a mere expectation based upon an anticipated continuance of the existing law. It must have become a title, legal or equitable, to the present or future enjoyment of property or to the present or future enjoyment of the demand, or a legal exemption from a demand made by another." *People ex rel. Eitel et al. v. Lindheimer et al.*, 371 Ill. 367, 21 N.E.2d 318, 321 (1939).

Because Rees was absolutely barred from participating in the fund prior to the statute's amendment in August 1996, under *Reidy*, Rees was legally exempt from any demand for fees. Because this right to a refund had vested, the amendment to the statute did not affect Rees' position.[7]

We are also mindful that, under the language of the statute, the PSTIF is given retroactive application. In *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 872 (Mo. banc 1993), the Missouri Supreme Court explained:

> Under the rules of statutory construction, statutory provisions that are substantive "are generally presumed to operate prospectively, 'unless the legislative intent that they be given retroactive operation clearly appears from the express language of the act or by necessary or unavoidable implication.' " *Dept. of Soc. Services v. Villa Capri Homes*, 684 S.W.2d 327, 332 (Mo. banc 1985), *quoting Lincoln Credit Co. v. Peach*, 636 S.W.2d 31, 34 (Mo. banc 1982). *See also Doe v. Roman Catholic Diocese of Jefferson City*, 862 S.W.2d

338 (Mo. banc 1993). On the other hand, "[a] statutory provision that is remedial or procedural operates retrospectively unless the legislature expressly states otherwise." *Wilkes v. Mo. Hwy. and Transp. Comm'n*, 762 S.W.2d 27, 28 (Mo. banc 1988).

Although the statute in question does extend retroactively to above-ground tank owners, making them eligible to participate in the PSTIF, it does not operate retrospectively in changing above-ground tank owners into underground tank owners who would benefit from USTIF. Rees' **current** participation in the PSTIF is the source of any benefit that might flow to it therefrom; Rees gains nothing additional from the fees it paid before the change in the statute.

■ We hold that under *Reidy*, the USTIF fee, as applied to Rees, violated Article I, § 8 of the United States Constitution. Rees could not benefit in any way from the transport load fees it paid at the time that those fees were paid. The subsequent change in the statutes does not change this fact. The AHC's decision that Rees is entitled to a refund is affirmed.

### Rees' Appeal—Interest on Refund of Fees

■ Having determined that the AHC had jurisdiction to decide and did, in fact, correctly decide that Rees was entitled to a refund, we turn to Rees' appeal. Rees contends that the AHC erred by not awarding interest on the refund of the fees. The AHC did not award any interest because it "[found] no statutory provision providing for payment of interest." Rees argues that there is such a provision, and that interest is mandatory under

---

7. The Trustees argue that Rees' right had not vested because the "right must be more than a mere expectation based upon an anticipated continuance of the existing law." *Cosada Villa of Missouri, Inc. v. Department of Soc. Servs.*, 868 S.W.2d 157, 160 (Mo.App.1994). A moment's reflection will show that this argument is misleading. Rees' right to a refund is not based upon the continuance of the

statute as written, but instead is based upon the statute as it existed when Rees paid the transport load fees, a statute declared unconstitutional as applied in *Reidy*. Under the Trustees' formulation, any subsequent statutory change could forever bar a claimant from receiving what is rightfully due them under the existing law.

§ 621.050.2. Section 621.050 provides as follows:

1. Except as otherwise provided by law, any person or entity shall have the right to appeal to the administrative hearing commission from any finding, order, decision, assessment or additional assessment made by the director of revenue. Any person or entity who is a party to such a dispute shall be entitled to a hearing before the administrative hearing commission by the filing of a petition with the administrative hearing commission within thirty days after the decision of the director is placed in the United States mail or within thirty days after the decision is delivered, whichever is earlier. The decision of the director of revenue shall contain a notice of the right of appeal in substantially the following language:

If you were adversely affected by this decision, you may appeal to the administrative hearing commission. To appeal, you must file a petition with the administrative hearing commission within thirty days after the date this decision was mailed or the date it was delivered, whichever date was earlier. If any such petition is sent by registered mail or certified mail, it will be deemed filed on the date it is mailed; if it is sent by any method other than registered mail or certified mail, it will be deemed filed on the date it is received by the commission.

2. The procedures applicable to the processing of such hearings and determinations shall be those established by chapter 536, RSMo; provided that, any provision of law to the contrary notwithstanding, in any action before the commission arising under chapter 144, RSMo, a seller may prove that a sale is exempt from taxation under such chapter in accordance with proof admissible under the applicable rules of evidence. The administrative hearing commission shall maintain a transcript of all testimony and proceedings in hearings governed by this section, and copies thereof shall be made available to any interested person upon the payment of a fee which shall in no case exceed the reasonable cost of preparation and supply. Decisions of the administrative hearing commission under this section shall be binding subject to appeal by either party. **In the event the taxpayer prevails in any dispute under this section, interest shall be allowed at the rate of six percent per annum upon the amount found to have been wrongfully collected or erroneously paid** except for taxes paid under protest and held by the director in a special deposit which shall be paid as specified by section 144.700, RSMo. In any proceeding before the administrative hearing commission under this section the burden of proof shall be on the taxpayer except for the following issues, as to which the burden of proof shall be on the director of revenue:

(1) Whether the taxpayer has been guilty of fraud with attempt to evade tax;

(2) Whether the petitioner is liable as the transferee of property of a taxpayer (but not to show that the taxpayer was liable for the tax); and

(3) Whether the taxpayer is liable for any increase in a deficiency where such increase is asserted initially after the notice of deficiency was mailed and a protest filed, unless such increase in deficiency is the result of a change or correction of federal taxable income required to be reported by the taxpayer, and of which change or correction the director of revenue had no notice or knowledge at the time he mailed the notice of deficiency.

§ 621.050, RSMo 1994 (emphasis added). The Trustees contend that § 621.050.2 is not applicable because it specifically deals with interest awarded to "taxpayers" and

Rees is not seeking a tax refund, but a refund of fees. The question is whether the term "the taxpayer" in the statutory subsection represents, as it appears, an intention to limit recovery of interest to cases involving tax refunds.

This court dealt with the application of § 621.050 in *State ex rel. Missouri Dir. of Revenue v. Deutsch*, 751 S.W.2d 132 (Mo. App.1988). In *Deutsch*, the DOR contended that § 621.050 had no application to appeals related to DOR decisions concerning individualized license plates issued under Chapter 301 RSMo. The DOR contended that the phrase "the taxpayer" signified that the statute was applicable only to tax disputes, and that a dispute related to the recall of customized license plates was therefore not within the jurisdiction of the AHC. This court rejected the argument, noting that subsection 1 referred to "any person or entity." *Id.* at 134. This court noted that the broad language of subsection 1 was unaffected by the narrower language of subsection 2 which refers to "the taxpayer" in dealing with issues of interest recovery and with burden of proof. Thus, *Deutsch* did not specifically decide the breadth of the interest provision in subsection 2, but assumed that subsection 2 was narrower, applying only to claims for refund of taxes. To that extent, the comment in *Deutsch* was *obiter dictum*. Thus, the issue before us arguably remains undecided.

Our research into the history of § 621.050 reveals that previous statutory provisions specified that an appeal from a decision of the DOR was to go to the state tax commission. *See, e.g.,* § 138.430, RSMo 1969. There was no provision included for recovery of interest. In 1978, S.B. 661 repealed § 138.430 and enacted § 161.273, which created exclusive jurisdiction in the AHC for appeals from the DOR. This section included the provision that allowed recovery of interest to "the taxpayer" for amounts wrongfully collected or erroneously paid. It appears that the inclusion of provisions related to interest were derived from § 144.685, RSMo 1959, which dealt with review of a decision of the DOR on sales and use tax issues. Section 144.685 was also repealed by S.B. 661 on 1978. Section 161.273 was then amended in 1981 to include an exception to the recovery of interest for "taxes paid under protest and held by the director in a special deposit...." Section 161.273 was renumbered in the 1984 supplement to become § 621.050. Subsequent modifications in 1986, 1989, and 1991 were unrelated to the issues in question.

While the foregoing history is of limited value on the issue of legislative intent, it shows that the General Assembly merged several statutory concepts into one statute in § 621.050, the primary purpose of which was to provide "for a more uniform procedure for administrative review by the [AHC] of disputes involving certain state agencies." *Deutsch*, 751 S.W.2d at 134; S.B. 661, 79th Gen. Assembly, 2d Reg. Sess. (Mo.1978). It would appear the legislature was also attempting to carry forward a provision allowing recovery of interest to taxpayers who prevail against the DOR. We believe it is reasonable to assume that the word "the taxpayer" in § 621.050 appears in the statute because the General Assembly intended to provide recovery of interest with regard to *taxes* wrongfully collected or erroneously paid. This is consistent with the fact that the General Assembly then amended § 161.273 to create an exception for taxes paid under protest into a special deposit. Possibly, the legislature may have been intending to limit interest recovery to amounts which were paid into the state treasury as tax revenues and were available for the state's use during the pendency of any appeals. Funds erroneously paid into a storage bank insurance fund to be held against contingencies are not funds available to the state as tax revenue. In any event, taking the language at face value,[8] we find the

---

**8.** In *Buder v. Director of Revenue,* 869 S.W.2d 752, 752 (Mo. banc 1994), there is an unex-

statute leaves Rees with no authority for its claim of interest.

We conclude that the AHC did not err in its determination that there is no statutory provision allowing recovery of interest to Rees.

## Conclusion

The decision of the Administrative Hearing Commission is affirmed.

plained reference to § 621.050 as a revenue law. Neither the AHC nor this court have constitutional authority to construe the revenue laws of this state. Mo. Const. art. V, § 3. While a claim for refund of fees is not a revenue claim, and the statute in question is arguably not a "revenue law," we nevertheless take the reference to "the taxpayer" at its plain meaning.