

# SUPREME COURT OF MISSOURI
## en banc

| | | |
|---|---|---|
| CITY OF HARRISONVILLE, MISSOURI, | ) ) ) | *Opinion issued December 20, 2022* |
| Respondent/Cross-Appellant, | ) ) | |
| v. | ) | No. SC99273 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE MO PETROLEUM STORAGE TANK INSURANCE FUND IN THEIR OFFICIAL CAPACITY, | ) ) ) ) ) | |
| Appellant/Cross-Respondent. | ) ) | |

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Aaron J. Martin, Judge

The City of Harrisonville and the board of trustees of the petroleum storage tank insurance fund[1] appeal the judgment of the circuit court awarding $8 million in punitive damages against the board on the city's claim of fraud and ordering post-judgment interest to accrue from the date it entered judgment. On appeal, the city claims the circuit court erred in ordering post-judgment interest accrue from the date it entered judgment rather than the date of an earlier judgment. In its cross-appeal, the board raised six claims of

---

[1] Hereinafter, this opinion refers to the board of trustees of the petroleum storage tank insurance fund as the "board," and to the petroleum storage tank insurance fund, itself, as the "fund."

error, including that the city's claim of fraud against it was barred by sovereign immunity. The Court finds the circuit court erred in entering its judgment awarding punitive damages to the city on its fraud claim because the board is a state agency entitled to sovereign immunity and no exception to immunity applies. The circuit court's judgment is reversed, and judgment is entered for the board pursuant to Rule 84.14.

## Factual and Procedural Background

In 2003, the city decided to upgrade its sewer system. During that process, the city discovered that soil in its easement adjacent to a gas station was contaminated by petroleum leaking from an underground storage tank. The city reported the petroleum leak to the department of natural resources, which informed the city the board had monitored contamination from the gas station since 1997. The board determined the contamination in the city's easement traced back to the gas station. The board was involved, along with the city and the fund's third-party administrator, in deciding how to remediate the contamination. An environmental engineer the board retained suggested the most cost-effective solution was to leave the contaminated soil in place and install petroleum-resistant pipes and fittings in the contaminated easement for the city's sewer upgrade. To that end, the city ultimately hired Midwest Remediation upon recommendation by the fund's third-party administrator to install petroleum-resistant pipe and fittings in the easement, with the understanding the fund would reimburse the city's costs.

Despite its demands for reimbursement, the fund did not reimburse the city for the costs of Midwest Remediation's work. When it was not paid, the city sued the fund in the

2

Cass County circuit court, asserting claims for the torts of negligent misrepresentation and fraud. The city also asserted claims for the torts of nuisance and trespass against the owner and former owner of the gas station based on the migration of petroleum contamination from the underground tank system. The city sought compensatory and punitive damages from each defendant. It also sought punitive damages against the fund on its fraud claim. Following a trial in 2011, a jury returned a verdict for the city on all claims, awarding it compensatory damages against all defendants, $100 in punitive damages against the owners, and $8 million in punitive damages against the fund. The circuit court remitted the punitive damages award against the fund to $2.5 million. All defendants appealed, and the city filed a cross-appeal.

On appeal in 2016, this Court held the city's claims against the fund were not cognizable under the fund's enabling statutes and the fund is not a legal entity capable of suing or being sued.[2] *City of Harrisonville v. McCall Serv. Stations*, 495 S.W.3d 738, 751-52 (Mo. banc 2016) [hereinafter *City of Harrisonville I*]. As a result, the Court found neither the compensatory nor punitive damages awards against the fund were "cognizable." *Id.* Counsel for the fund, however, had abandoned the argument on appeal relating to the validity of the compensatory damages award. *Id.* at 752. Consequently, the Court affirmed the compensatory damages award and reversed only the award of punitive damages against the fund. *Id.* at 752-53.

---

[2] The city's claims against the gas station's owner and former owner were affirmed and are not at issue in this appeal.

The Court recognized, however, that counsel for the fund had not raised the argument that the fund was not a proper party until after the jury rendered its verdict. *Id.* at 753. So "when the issue finally was raised, the City was not in a position to request leave to amend its petition to add or substitute parties." *Id.* Recognizing the city's allegations "may state a cause of action" against the board, the Court remanded the case in the interest of fairness and justice "[w]ithout expressing any opinion about the merits of the claims that may be asserted or the source for payment of any judgment against the board on such claims[.]" *Id.*

On remand, the city filed a motion to substitute the board for the fund. At the request of the board, the circuit court ordered the city to file an amended petition. The city complied with the court's order by filing a second amended petition that, for the first time, named the board as a defendant.[3] Thereafter, the case was transferred to the Cole County circuit court, where venue was proper, and successively assigned to numerous judges. In 2018, the board filed a motion for summary judgment, claiming sovereign immunity from the city's tort claims, that was overruled.

Believing this Court had issued a remand with directions for the circuit court to review whether, after substitution, the city's first amended petition stated a claim against the board, the circuit court determined the city, indeed, stated a claim against the board.[4]

---

[3] In its judgment, the circuit court found the second amended petition was ineffective because the circuit court never granted the city leave to file it.

[4] This Court did not limit the issues before the circuit court on remand. In light of holding the fund is not a legal entity that can be sued, the Court issued a general remand to give the city the opportunity to add or substitute the board as a party and litigate any claims the city

4

Relying on the jury verdict from 2011, the circuit court entered judgment against the board for $8 million in punitive damages, the amount the jury awarded against the fund in 2011 before remittitur. The judgment also provided interest would accrue from the date judgment was entered against the board, rather than from the judgment entered against the fund in 2011. The board filed a motion to vacate, correct, alter, or amend the judgment, reasserting sovereign immunity, that the circuit court overruled. The board and the city cross-appealed. This Court has jurisdiction pursuant to article V, section 3 of the Missouri Constitution because the board, among other issues, raises a challenge to the validity of the statutory cap on punitive damages in section 510.265.1(2).[5]

In its appeal, the city claims the circuit court erred in ordering that interest accrue from the date of the judgment against the board, rather than from the date of judgment against the fund. In its cross-appeal, the board raises six claims of error, including that the circuit court erred in entering judgment for $8 million in punitive damages against it because sovereign immunity bars the city's tort claims.[6] Because that claim is dispositive, only that claim will be addressed.

---

"may" have had against it. *City of Harrisonville I*, 495 S.W.3d at 753. In so doing, the Court expressly disclaimed "any opinion about the merits of the claims that may be asserted or the source for payment of any judgment against the Board on such claim." *Id.*

[5] All statutory citations are to RSMo 2016, unless otherwise noted.

[6] While this case was pending, the Missouri Petroleum and Convenience Association ("MPCA") filed a motion for leave to file an amicus brief without the consent of all parties pursuant to Rule 84.05(f)(3). The Court sustained the motion, and the city subsequently filed a motion in opposition requesting the Court strike the MPCA's amicus brief because the MPCA failed to disclose that several of its officers and directors are respondents in this matter. The city also asserted the MPCA's brief refers to evidence not contained in the record and raises an argument unpreserved for appellate review. The Court hereby sustains

## Standard of Review

The circuit court's judgment will be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). "[T]his Court reviews *de novo* both the trial court's legal conclusions and its application of law to the facts." *Empire Dist. Elec. Co. v. Scorse*, 620 S.W.3d 216, 224 (Mo. banc 2021) (alteration in original) (internal quotation marks omitted).

## Board Entitled to Sovereign Immunity

The board claims the circuit court erred in that the city's suit for fraud and the award of punitive damages on that claim are barred because the board is a state agency with sovereign immunity against tort claims except as waived by the General Assembly. The city argues the board waived sovereign immunity because the board did not plead it as a defense and the circuit court's ruling that the board is not a state entity is the law of the case because the board did not appeal that ruling in *City of Harrisonville I.*

"[S]overeign immunity applies to the government and its political subdivisions unless waived or abrogated or the sovereign consents to suit." *Metro. St. Louis Sewer Dist. v. City of Bellefontaine Neighbors*, 476 S.W.3d 913, 921 (Mo. banc 2016). Section 537.600 codifies the doctrine of sovereign immunity from liability in tort. The statute provides:

the city's motion and strikes the MPCA's amicus brief because the MPCA failed fully to disclose its interest in the matter, it refers to extraneous evidence, and its legal argument is duplicative of an argument raised by the board.

6

> Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is herby expressly waived in [two] instances[.]

Section 537.600.1. The two waivers of immunity from liability and suit for compensatory damages for negligent acts or omissions in section 527.600.1(1)-(2) are for injuries caused by public employees' negligent operation of motor vehicles in the course of their employment and for injuries caused by a dangerous condition of a public entity's property. Section 527.610.1 also provides sovereign immunity is waived by a public entity's purchase of liability insurance for tort claims under certain circumstances.

In the absence of an express statutory exception or recognized common-law exception, "sovereign immunity is the rule and applies to all suits against public entities[.]" *City of Bellefontaine Neighbors*, 476 S.W.3d at 921-22. To overcome the general rule of sovereign immunity, a plaintiff must show "the legislature expressly intended to waive sovereign immunity." *Poke v. Indep. Sch. Dist.*, 647 S.W.3d 18, 21 (Mo. banc 2022). Applied to this case, sovereign immunity bars the city's fraud claim against the board if the board is a state agency, the General Assembly has not waived sovereign immunity, and the city has not pleaded and proved an applicable exception.

In regard to whether the board is a state agency, section 319.129.8 designates it "a type III agency," and it is vested with the authority to "appoint an executive director and other employees as needed, *who shall be state employees*[.]" The "type III agency"

7

designation refers to the Omnibus State Reorganization Act of 1974,[7] which was enacted with the purpose "to provide . . . for the most efficient and economical operations possible *in the administration of the executive branch of state government*." *See* Omnibus State Reorganization Act of 1974, App. B, sec. 1.4, RSMo 2016 (emphasis added). The act did so by providing certain "commissions, boards, offices, bureaus, divisions or other agencies" are under the supervision of one of several named administrative departments such as the department of natural resources ("DNR"). *Id.* sec. 1.5(1). As a type III agency, the board is assigned to, and under the supervision of, the director of DNR for "budgeting and reporting" purposes. *Id.* sec. 1.7(1)(c); *see also* Departmental Plans, App. C, RSMo Supp. 2020.

Further, the board participates in the state's annual budget process through DNR and may spend only such portion of the fund as authorized by legislative appropriation. In that way, the board is accountable to the legislature, which retains the power to regulate its

---

[7] The Omnibus State Reorganization Act of 1974 implemented a 1972 constitutional amendment to article IV of the Missouri Constitution reorganizing the executive department of state government. *State ex inf. Danforth v. Merrell*, 530 S.W.2d 209, 210 (Mo. banc 1975). The amendment included what is now article IV, section 12, which provides in relevant part:

> Unless discontinued all present or future boards, bureaus, commissions, and other agencies of the state exercising administrative or executive authority shall be assigned by law or by the governor as provided by law to the office of administration or to one of the fifteen administrative departments to which their respective powers and duties are germane.

The Omnibus State Reorganization Act of 1974 carries out the constitutional provision by assigning such boards, commissions, and so forth to executive departments.

use of moneys within the fund. *See, e.g.*, H.B. 6, section 6.360 (2019) (authorizing money out of the state treasury for the board from the fund). Additionally, the Governor appoints, either directly or indirectly, all the board's individual trustees. Eight of the 11 trustees are directly appointed by the Governor with the advice and consent of the senate. Section 319.129.4. The three other trustees hold their positions by virtue of holding other offices appointed by the Governor with the advice and consent of the senate. *See id.*; Mo. Const. art. IV, sec. 17. Moreover, section 319.129.13 gives the board rulemaking authority, and the board is subject to the same rulemaking procedures as other state entities, *see, e.g.*, section 536.016-.025. Because the board's enabling statutes expressly designate it a state agency and the authority granted to it is consistent with that designation, the Court holds the board is a state agency entitled to sovereign immunity.

In support of the judgment, the city argues sovereign immunity does not apply to the board because moneys within the fund are not "state Funds." The city's position is based on the court of appeals' decisions in *Estes ex rel. v. Board of Trustees of Missouri Public Entity Risk Management Fund*, 623 S.W.3d 678 (Mo. App. 2021); *Rees Oil Co. & Rees Petroleum Products, Inc. v. Director of Revenue*, 992 S.W.2d 354 (Mo. App. 1999); and *River Fleets, Inc. v. Carter*, 990 S.W.2d 75 (Mo. App. 1999).

The holdings in these cases that sovereign immunity was not a bar to suit are not persuasive. In *River Fleets*, the plaintiff sued the chair of the board claiming interest on a refund of erroneously collected fees. 990 S.W.2d at 76. In *Rees Oil*, the plaintiffs sued the director of revenue, DNR, and the board, seeking "a refund of petroleum transport fees

9

paid into the [fund] from the Director of Revenue" and interest that had accrued on those fees. 992 S.W.2d at 356.

The issue articulated in *River Fleets* and *Rees Oil* was whether sovereign immunity protected the fund from suit, and the court of appeals determined the plaintiff's claim for interest was not barred by sovereign immunity because the moneys in the fund are "not deemed to be state funds," moneys in the fund are not transferred to general revenue at the end of each biennium, and section 319.131.4 provides the "liability of the . . . fund is not the liability of the state." *River Fleets,* 990 S.W.2d at 77-78. It concluded, "If the fund's liability is not the liability of the state of Missouri, then, ipso facto, the State immunity from liability does not apply" and, therefore, "payment of interest on the refund of fees wrongfully collected under § 310.129.1 is not prohibited by sovereign immunity." *Id.* at 78. The *fund* is not the *board*, *City of Harrisonville I*, 495 S.W.3d at 752, and no case has been found holding the *board* is not entitled to sovereign immunity for claims made against it based on its or its agents' tortious conduct.[8]

And *Estes* differs from the issues in this case because it was a suit against the Missouri public entity risk management fund ("MOPERM") for the torts of bad faith refusal to settle within policy limits and breach of fiduciary duty. 623 S.W.3d at 686. The court of appeals found the suit was not barred by sovereign immunity because MOPERM

---

[8] In *City of Harrisonville I*, this Court analogized the relationship between the fund and the board to the relationship between the second injury fund and the state treasurer as custodian of that fund. 495 S.W.3d at 752 n.7. Continuing that analogy, the city's claim against the board would be similar to suing the state treasurer as custodian of the second injury fund for the treasurer's tortious conduct committed in administering the fund.

10

did not assert it was the "state" or a "state agency" and section 537.705.4 that establishes MOPERM expressly provides it is not "the state." *Id.* at 691.

Additionally, in none of these cases did the court of appeals address whether the *board* is entitled to sovereign immunity from claims for injuries caused by the allegedly tortious conduct of its agents. It held the *fund* is not entitled to sovereign immunity from claims for refunds of fees wrongfully collected or claims for interest that accrued on those erroneously collected fees. *Rees Oil*, 992 S.W.2d at 352; *River Fleets*, 990 S.W.2d at 78. Therefore, the court of appeals decisions on which the city relies do not support finding the board is not entitled to sovereign immunity.

The city next claims that, in the circuit court proceedings culminating in the final judgment appealed in *City of Harrisonville I*, designating the fund as a defendant was merely a misdescription of the board, so the board was before the circuit court as a party defendant from the filing of the case, albeit mistakenly named as the fund. As a result, the city avers the board waived and abandoned its ability to assert sovereign immunity when it could have, but did not, assert sovereign immunity prior to the circuit court's final judgment in *City of Harrisonville I*.

The fund and the board are separate and distinct. *City of Harrisonville I*, 495 S.W.3d at 752-53. While the fund "is merely an account within the state's treasury," the board is a state agency entrusted with administering the fund. *Id.* at 752. And this Court expressly stated in *City of Harrisonville I*: "[T]he City did not sue the Board or its members, employees, or contractors. Instead, it sued the Fund itself." *Id.* That holding was the basis

11

for the Court reversing the award of punitive damages against the fund and remanding the case to provide the city an opportunity to state a claim against the board. *See id.* at 753.[9]

On remand, the city rectified its pleading mistake by substituting the board in place of the fund. It characterizes that substitution as merely correcting a misnomer. Pursuant to *City of Harrisonville I*, however, that substitution could not be merely the correction of a mistake in the name of the board; it could only be a change of party substituting the board in place of the fund. As a result, the common law principle of misnomer does not apply. *See State ex rel. Holzum v. Schneider*, 342 S.W.3d 313, 316 (Mo. banc 2011) ("In the 'misnomer' situation, the correct party simply has been misnamed, but it is clear—from the name that was used—who or what the party is."). *Id*. The board was not a party to this litigation until it was substituted as a party on remand. *See City of Harrisonville I*, 495 S.W.3d at 752. After the board was substituted for the fund on remand, it timely asserted sovereign immunity as a defense. Consequently, the board did not waive or abandon its entitlement to assert sovereign immunity, and that issue is properly before this Court.

The city also claims it is the law of the case that the board is not a state entity so it is not entitled to  sovereign immunity. The law of the case doctrine "governs successive appeals involving substantially the same issues and facts, and applies appellate decisions to later proceedings in that case." *Williams v. Kimes*, 25 S.W.3d 150, 153 (Mo. banc 2000). The doctrine bars relitigating "issues not only expressly raised and decided on appeal, but

---

[9] The city did not file a motion for rehearing with respect to *City of Harrisonville I* arguing it sued the board and merely mistakenly used the wrong name.

also those that could have been raised but were not." *Walton v. City of Berkeley*, 223 S.W.3d 126, 129 (Mo. banc 2007).

Here, the city filed a motion in limine in advance of trial in 2011, seeking to prevent counsel for the fund from communicating to the jury that any damages awarded against the fund would be paid from public coffers. The circuit court sustained the city's motion in limine, based on its finding the fund was "not acting as an agent of the State of Missouri and is not the State of Missouri; [i]t is an entity created by Missouri Statute." The circuit court's ruling on the city's motion in limine, however, was "interlocutory and subject to change during the course of trial" and "by itself preserve[d] nothing for appeal." *Hancock v. Shook*, 100 S.W.3d 786, 802 (Mo. banc 2003). The issue of whether the board was an agent of the state was not raised at trial, and rightly so because the board was not a party at that time. This Court's decision in *City of Harrisonville I*, far from deciding the issue of the board's sovereign immunity, expressly declined to opine on the merits of any claim against the board. *City of Harrisonville I*, 495 S.W.3d at 753. Accordingly, there is no law of the case implicating the doctrine of sovereign immunity. *Cf. Am. Eagle Waste Indus., LLC v. St. Louis Cnty.*, 379 S.W.3d 813, 825 (Mo. banc 2012) (applying the law of the case doctrine to an issue the parties "fully litigated to a final judgment" and which the court of appeals decided).

In the end, the city's arguments fail, and sovereign immunity bars the city's fraud claim against the board because the board is a state agency, the General Assembly has not waived sovereign immunity for the tortious conduct alleged, and the city has not pleaded or proved facts that would bring its claims within an exception to sovereign immunity.

**Conclusion**

The circuit court misapplied the law in entering judgment for $8 million in punitive damages against the board because the board is a state agency entitled to sovereign immunity.  The circuit court's judgment is reversed, and judgment is entered for the board on the city's claim for fraud, pursuant to Rule 84.14.

_____
PATRICIA BRECKENRIDGE, JUDGE


All concur.